271 N.E.2d 191 (1971)
Linda HACKER, Appellant,
v.
REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION ET AL., Appellees.
No. 1070A172.
Appellate Court of Indiana, Division No. 2.
June 30, 1971.
*192 Kagan & Barker, Martinsville, for appellant.
Theodore Sendak, Atty. Gen., Darrel K. Diamond, Lon D. Shawley, Deputy Attys. Gen., for appellees.
STATON, Judge.
This is an appeal from a negative decision by the Full Review Board of the Indiana Employment Security Division. The Review Board determined that the claimant failed to meet the availability requirements of § 1403 of the Employment Security Act by limiting her availability to night shift work only and not making an independent, sincere effort to find work from October 17, 1969 to January 13, 1970. Section 1403 of the Indiana Employment Security Act may be found in IC 1971, XX-X-XX-X; Ind. Ann. Stat., § 52-1538b (Burns 1964).
The Review Board found in its decision "that claimant limited her availability to night shift work and had made but two telephone contacts in an effort to secure work from October 17, 1969 to January 13, 1970." The decision of the Review Board is as follows:
"The referee's decision dated February 19, 1970, under § 1501 of the Act is hereby modified this 28th day of September, 1970. The Review Board holds that claimant is not disqualified for benefit rights under § 1501 of the Act. The Review Board initially determines that claimant is not entitled to benefit rights under § 1403 of the Act from October 17, 1969 to January 13, 1970."
The appellant was employed as a production worker for R.C.A. on the night shift until October 17, 1969. On October 15, 1969, she was informed that she lacked sufficient seniority to transfer to another shift and would therefore be laid off on October 17, 1969. The next week and each succeeding week, until June 1970, Linda Hacker made her application for unemployment benefits.
The evidence discloses that the appellant has four children and that the oldest is ten years of age. She began her employment with R.C.A. around March 1966 and placed on her application for employment that she was available for the night shift only. The appellant lived in Martinsville, Indiana and found it very difficult to obtain a baby sitter who would "come out that far." In March, 1967, she was involuntarily laid off because the night shift shut down. She received unemployment benefits for eight weeks during this lay off period. Again, in 1968 she was laid off and received unemployment benefits. The circumstances surrounding the employers' clerical procedures were the same as in the present case.
After being laid off the third time on October 17, 1969, she made an application for unemployment benefits but was turned down by the Claims Deputy of the Indiana Employment Security Division. This denial was based on records submitted by the employer which raised the question as to whether the appellant was voluntarily or involuntarily laid off from her employment. This question was submitted to a referee who determined the matter on February 19, 1970 in appellant's favor. The referee's finding and decision is as follows:
"The next issue for us to determine in this case is whether claimant was discharged by employer for misconduct in connection with her work there. Since we find that claimant was discharged by employer because of a cutback in production for her said shift of work there, *193 we find hereby that claimant was discharged by employer for its convenience and not for misconduct in connection with her work there.
"DECISION: Deputy's initial determination as to the issue involved in this case is modified hereby on February 19, 1970; deputy's initial determination as modified is reversed hereby on February 19, 1970. If claimant is eligible otherwise, she is entitled to benefits under Indiana Employment Security Act."
Thereafter, the employer appealed this "Decision" to the Review Board which sustained the referee's "Decision" by making the following finding, conclusion and decision:
"The Review Board finds that claimant was a production worker for this employer off and on over a period of approximately three and a half years on the 5:30 P.M. to 2 A.M. shift."
"It further finds that claimant was laid off at the end of her work shift on October 17, 1969, because she did not have enough seniority to transfer to a day shift.
"The Review Board concludes that claimant was laid off on October 17, 1969, through no fault of her own since she did not have enough seniority to transfer to a day shift, therefore, cause for her separation is attributable to the employer.
"DECISION: The referee's decision dated February 19, 1970, under § 1501 of the Act is hereby modified this 28th day of September, 1970. The Review Board holds that claimant is not disqualified for benefit rights under § 1501 of the Act. * * * "
However, the Review Board further "initially" determined and considered the matter of appellant's "availability to work" under § 1403 of the Act which in part reads as follows:
"It further finds that claimant limited her availability to night shift work and had made only two telephone contacts in an effort to secure work from October 17, 1969 to January 13, 1970.
"It further concludes that claimant failed to meet the availability requirements of § 1403 of the Act by limiting her availability to night shift work only and not making an independent, sincere effort to find work from October 17, 1969, to January 13, 1970.
"DECISION: * * * The Review Board initially determines that claimant is not entitled to benefit rights under § 1403 of the Act from October 17, 1969, to January 13, 1970."
It is appellant's first contention that the Review Board cannot consider anything on review other than the decision of the referee and that issues raised before the referee but not the basis of his decision should not be considered by the Review Board. We cannot agree with this contention.
It is the appellant's second contention that the Review Board's decision is contrary to law and must be reversed. With this contention we do agree.
The scope of review by the Review Board is not limited when an appeal is taken from a referee's decision. Ogilvie v. Review Board of Indiana Employment Security Division (1962), 133 Ind. App. 664, 184 N.E.2d 817. In the Ogilvie case, supra, our court underscored the nature of the review at page 672, 184 N.E.2d at page 821: "It has been generally established that appeal procedures within an administrative agency constitutes administrative rather than judicial review and that the general legal principles applying in cases of appeal from trial to appellate courts do not apply to the various steps taken for review of an order or decision entered by a subordinate tribunal of the administrative agency." See Lutz v. Goldberg (1950), 7 N.J. Super. 288, 73 A.2d 65; City of Passaic v. Division of Tax Appeals, Dept. of Treasury (1959), 54 N.J. Super. 215, 148 A.2d 630; Lake Placid Club, Inc. v. Arams (1958), 6 A.D.2d 469, *194 179 N.Y.S.2d 487, aff'd 6 N.Y.2d 857, 188 N.Y.S.2d 561, 160 N.E.2d 92.
"In the final analysis the claimant-appellant is urging herein that the Indiana Employment Security Act affords only a very limited scope of review from the decisions of the Claims Deputy and the Referee. This theory is totally unsupported by the Act."

* * * * * *
"* * * The appeal to the Review Board removes the claim in its entirety. As may be seen from even a cursory observation of the Act, any other holding would be inconsistent with the statutory method for the Review Board's final disposition of disputed benefit claims."
The door to the issue of "Availability to Work" was opened repeatedly by the appellant. We note especially three pages of the transcript which are devoted to a direct-examination of appellant by her attorney on this very issue. One particularly interesting question attempts to draw an analogy:
"Q. I see. Now, when we discussed this case we made a kind of analogy to a plumber, did we not? We considered you a particular worker, is that right? And what kind of a worker was that?
"A. A night worker, I suppose.
"Q. A night worker, right, and I said our position was that you're like a plumber, and when you're asked to quit plumbing and start doing electrical work, you couldn't do it, is that right?
"Q. That's right, and when you hired on at R.C.A. for night work and they asked you to do day work, it's impossible, is that right?"
At page 16 of the transcript we find the referee asking the following questions and receiving the following answers from the appellant without objections:
REFEREE:
"Q. Can you tell us again just how your children affect your availability for daytime work?
"A. Well, I have three in school and one still home, and the bus comes around quarter after seven and they are home at 2:30, and there just isn't anybody that wants to come in at those hours, plus have one home all day.
"Q. In other words, you are not able to obtain baby-sitting service for your one child at home during the day, is that correct?
"A. No, I live in the country and nobody wants to come out that far.
"Q. Have you been looking for work since your separation from the employer?
"A. I have called two places in Martinsville, but nobody is hiring right now.
"Q. Now, when were you informed by the employer, or rather what were your actual hours at the time of your separation?
"A. From 5:30 to 2:00.
"Q. That would be from 5:30 P.M. to 2:00 A.M.?
"A. Yes."
The issue of availability has been raised and becomes a matter of consideration for the Review Board. Burns Administrative Rules and Regulations, S. 52-1542b(1), provides in part:
"* * * [I]n general, rules of evidence and procedure for the trial of civil causes shall govern proceedings before a referee or a review board, but not to such an extent as to obstruct or prevent a full presentation of fact or to jeopardize the rights of any interested party."
*195 Under Rule TR. 15(B) of the Indiana Rules of Civil Procedure we find:
"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings * * *"
The issue of "Availability for Work" was extensively exposed and examined by both the employee and the employer as well as the referee, all without objection. However, failure to object is not the only requirement necessary to impliedly litigate a new issue. Both parties to the proceedings must litigate the new issue; and the evidence to support the introduction of a new issue cannot be adduced under cover of asking questions about an already pleaded issue. Kaye v. Smitherman, 225 F.2d 583 (10th Cir.1955); Hall v. National Supply Co., 270 F.2d 379 (5th Cir.1959); Gallon v. Lloyd-Thomas Co., 264 F.2d 821 (8th Cir.1959).
An examination of the transcript shows:
(1) Both parties litigated the issue of availability.
(2) Neither the appellant nor the appellee objected to the introduction of the new issue of availability, and
(3) The evidence which supports the new issue was not received collaterally to the issue to be litigated and the notice of pleading sent out by the referee.
Therefore, we conclude that the issue of "Availability for Work" was a proper question for review by the Review Board.
We now address ourselves to the second contention of the appellant that the "Decision" of the Review Board is contrary to law. We will not disturb the decision of the Review Board: "unless reasonable men would be bound to reach a different conclusion on the evidence" presented. Cantrell v. Review Board Employment Security Division (1970), Ind. App. (23 Ind.Dec. 286), 263 N.E.2d 216; Miles v. Review Board Employment Security Division (1951), 120 Ind. App. 685, 96 N.E.2d 128. In the present case, we are compelled to agree with the appellant's contention that the Review Board's decision is contrary to law.
We first look to the purpose of the unemployment compensation statutes. "Like other social legislation, the unemployment compensation law should receive a liberal construction in order that it may accomplish its purpose." Schakel v. Review Board Employment Security Division (1968), Ind. App. (13 Ind.Dec. 697), 235 N.E.2d 497. (Transfer denied).
In Renwanz v. Review Board Employment Security Division (1971), Ind. App. (25 Ind.Dec. 178), 267 N.E.2d 844 where a woman claimant: "* * * testified she was available for full time employment but stipulated she would not accept employment on Sunday or during the evening because she was needed at home * * * to care for her 16 year old son," this court in a decision written by Judge Buchanan noted that: "The Board must view the statute as if seeing it through an open door, and not as though squinting through the keyhole." Renwanz, supra, further pointed out the purpose of the Act by quoting from Sutherland's Statutory Construction, Vol. 3, § 7211 and stressing that "unemployment compensation statutes were enacted for the purpose of relieving the harsh social consequences resulting from unemployment, and if these statutes are to accomplish their purpose they must be given a liberal interpretation. The state of Indiana is no exception to this doctrine of liberal construction of social welfare statutes."
In the present case, the appellant had been employed by the same employer for approximately three (3) and one-half (1/2) years. When she made her original application for employment, she restricted *196 her availability to the night shift only. Her reason for this restriction was four (4) children under ten (10) years of age at home, and she could not obtain a baby sitter at other times of the day. She worked in Bloomington at R.C.A. and lived in Martinsville, Indiana. It was difficult to get a baby sitter to come out that far. On two previous occasions during her three (3) and one-half (1/2) years of employment, she had been laid off of the night shift, received unemployment benefits and had been recalled to work within several months.
All night shift lay offs including the present one were involuntary. Noting further that appellant was involuntarily laid off, our court has specifically declared that: "* * * [The Employment Security Act] was not designed for the benefit of those who are voluntarily idle. It was intended to alleviate the distressing consequences of involuntary unemployment." Walton v. Wilhelm (1950), 120 Ind. App. 218, 224, 91 N.E.2d 373, 376. In the present case the appellant was found to have been involuntarily terminated from her employment through no fault of her own since she did not have enough seniority to transfer to a day shift. The "cause for her separation is attributable to the employer," as found by the Review Board in its conclusions upon review.
The next question which must be answered is whether or not the appellant was immediately taken out of the labor market when she was involuntarily terminated by her employer. The appellant has for three (3) and one-half (1/2) years prior to involuntary termination of her employment restricted her services to the night shift. The appellant was unquestionably a part of the labor market for this period of three (3) and one-half (1/2) years, during which time she had been involuntarily laid off twice, paid unemployment compensation and recalled to work within several months. "A labor market for an individual exists when there is a market for the type of services which he offers in a geographical area in which he offers them. `Market' in this sense does not mean that job vacancies must exist; the purpose of unemployment compensation is to compensate for the lack of appropriate job vacancies." 55 Yale L.R. 124 (1945). Market, then, means only that the type of services which the individual possesses are still generally performed in the geographical area in which the individual is located. We do not think that it is reasonable to infer from the evidence that the appellant took herself out of the labor market. Appellant did not become unavailable under the Act, since there is no evidence that she removed herself from her market area. The appellant registered each week for benefits, and made several telephone calls to inquire about employment. Therefore, the appellant did not take herself out of the labor market within the period of three months immediately after her termination. We are not deciding that a claimant may indefinitely place restrictions upon her services for employment and remain in the labor market but we are deciding that three months is a reasonable time to maintain such a restriction when considering the employment history of the appellant and the nature of her termination.
The requirement that an individual be "available for work" is a variation of the requirement originally used in the British Unemployment Insurance Act which uses the term "Capable of and available for work." Approximately thirty-four (34) states use this term. Indiana is one of several states which use a variation of the term. 55 Yale L.R. 124 (1945). Our statute, IC 1971, XX-X-XX-X; Ind. Ann. Stat. 1538b (Burns 1964) provides: An unemployed individual shall be eligible to receive benefits with respect to any work week if: He is physically and mentally able to work and is found by the division to be making an effort to secure work; * * *" In Nelson v. Review Board Employment Security Div. (1949), 119 Ind. App. 10, 16, 82 N.E.2d 523, 526, this court stated: "* * * *197 [T]he definition of unavailability for work is not limited to the exact specifications of the statute by its express terms, and * * * the determination of whether a given individual is available for work is a question of fact to be determined in the light of the circumstances of each particular case, * * *" In the case just cited, the claimant registered for work and reported regularly at the employment office as required. In addition, he watched the newspapers, and had called at only one particular place seeking employment. Our court held that after reviewing these facts that: "There is no showing of bad faith on the part of the claimant, and the record does not show that he had not placed himself truly in the labor market as found by the Review Board. There is no showing that he had refused to accept any reference to suitable work in his employment area. * * There is no evidence from which any reasonable inference could be drawn that claimant failed to register a true intent to work as found by the Review Board." Nelson, supra, at 17, 82 N.E.2d at 526. In the present case, the appellant-claimant registered each week at the Employment Office and made two telephone contacts in an effort to secure work during the period from October 17, 1969 to January 13, 1970. She testified that "nobody is hiring right now." This was in response to a question put to the claimant by the referee. He apparently was satisfied with this answer since he did not pursue this line of questioning any further. There is absolutely no inference that can be drawn from the testimony which would tend to show that the claimant was "not making an independent, sincere effort to find work from October 17, 1969 to January 13, 1970." There is no evidence in the record which would indicate the slightest inference that the claimant has ever refused an offer of suitable employment. We must therefore agree with the court in Tung-sol Electric v. Board of Review, Division of Employment Security, Department of Labor & Industry (1955), 35 N.J. Super. 397, 114 A.2d 285, 289 wherein the court concluded: "It cannot be maintained that a claimant, who is absolutely compelled to either continue to limit her availability to the second shift after the lapse of a reasonable time or suffer her young children to fend for themselves, must on that account lose her right to compensation."
The decision of the Review Board should be and the same is hereby reversed.
HOFFMAN, C.J., concurs in result.
SHARP and WHITE, JJ., concur.