MILTON O. BALL *v.* REVIEW BOARD OF INDIANA EMPLOYMENT SECURITY DIVISION, ET AL.

[No. 471A71. Filed October 13, 1971.]

5.  *Ott* v. *Perrin* (1945), 116 Ind. App. 315, 320, 63 N. E. 2d 163, 166.

*Morris L. Kapper,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Darrel K. Diamond,* Deputy Attorney General, for appellees.

WHITE, J.—This is an unemployment compensation case in which the facts are undisputed. The issue is whether the work offered claimant after his layoff was "suitable" and/or whether his failure to accept it was for "good cause."[1]

The claimant-appellant, Milton O. Ball, worked full time for Allison Division of General Motors Corporation from June 17, 1968, to May 5, 1970, as a janitor at an hourly pay rate of $3.50, when he was laid off for lack of work. After the expiration of the statutory one week waiting period[2] he began to receive unemployment compensation benefits of Forty Dollars per week plus benefits of Fifty-nine Dollars and fifty-seven cents per week under the Supplemental Benefits Agreemnt (SUB) between his Union and Allison Division, making total weekly benefits of Ninety-nine Dollars and fifty-seven cents.

---

1. Ind. Ann. Stat. § 52-1539a (Burns 1964) provides: "An individual shall be ineligible for . . . benefit rights: If . . . he fails without good cause . . . to accept suitable work when found for and offered to him . . . by an employing unit. . . ."

2. Defined in § 1404 of the Employment Security Act which is Ind. Ann. Stat. § 52-1538c (Burns 1964), also IC 1971, 22-4-14-4.

On June 9, 1970, L. S. Ayres and Company offered him full-time (forty hours per week) employment as a porter at an hourly rate of Two Dollars per hour, or a gross weekly wage of Eighty Dollars. He refused the offer. Had he accepted he no longer would have been eligible for unemployment compensation benefits[3] and, as a result of that ineligibility, he no longer would have been entitled to his SUB pay.[4] Thus by accepting the job offer he would have traded an unemployment income of virtually $100.00 per week for a gross employment wage of Eighty Dollars per week.[5]

Claimant's predicament arises, in part at least, out of the fact that during the time he was working full-time at Allison's he decided to augment his income by moonlighting at L. S. Ayres as a washer of pots and pans in the kitchen at Two Dollars per hour, twenty hours, or less, per week. This part-time employment lasted only from May 3, 1969, to August 23, 1969, when claimant left it voluntarily to go back to school, but it was sufficient to make L. S. Ayres & Company, as to him, a "base-period employer."[6] Consequently, Ayres was notified when claimant filed for unemployment compensation and it thereupon made the work offer which claimant refused. Ayres then filed with the Indiana Employ-

3. He would no longer be unemployed under the definition of §§ 301 and 302 of the Act, Ind. Ann. Stat. §§ 52-1527 and 52-1527a (Burns 1964), IC 1971, 22-4-3-1 and 22-4-3-2. Being unemployed is a condition of eligibility for benefits under § 1201 of the Act, Ind. Ann. Stat. § 52-1536 (Burns 1964), IC 1971, 22-4-12-1, and throughout the Act.

4. No written copy of the SUB plan is a part of the record. An officer of the Union was a witness at the hearing before the referee. His testimony as to provisions of the plan pertinent to claimant's situation is unchallenged. It is not in conflict with descriptions of SUB plans in the automotive industry found in a note in 31 Ind. L. J. 412, and in an annotation in 91 A. L. R. 2d 1211.

5. In addition to the loss of SUB pay, the Union witness testified that claimant would lose his company life insurance and health insurance.

6. Although the term "base-period employer" is used in § 1502 of the Act (quoted *post*, p. 497) it is defined only by the separate definitions of "base-period" and "employer". A "base-period" is "the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit period." § 212 of the Act, Ind. Ann. Stat. § 52-1526k (Burns 1964). The context of § 1502's use of the term clearly indicates that a "base-period employer" is an employing unit subject to the act which has employed an individual during his base-period.

ment Security Division a "Statement of Respondent's Contention" (Form 603) in which it made the contention that claimant was not entitled to benefits because he had refused an offer of suitable work without good cause. That issue was summarily determined against the claimant by a deputy who suspended benefits as of July 9, 1970. The suspension of benefits also automatically disqualified claimant for his SUB pay.

The deputy's reason for suspending benefits was his finding that:

"The claimant failed without good cause to accept work which is found to be suitable since it was under substantially the same terms and conditions under which he was previously employed by this base period employer."

That finding relates to the proviso of paragraph (a) of Section 1502 of the Employment Security Act.[7] That section renders disqualified for benefits any individual who "fails without good cause . . . to accept suitable work when found for and offered to him. . . ." Paragraph (a) of that section, including the proviso, reads:

"In determining whether or not any such work is suitable for an individual, the division shall consider the degree of risk involved to such individual's health, safety and morals, his physical fitness and prior training and experience, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence; Provided, however, That work under substantially the same terms and conditions under which he was employed by a base-period employer, which is within his prior training and experience and physical capacity to perform, shall be deemed to be suitable work unless the claimant has made a bona fide change in residence which makes such offered work unsuitable to him because of the distance involved."

7. The Employment Security Act was Ind. Acts 1947, Ch. 208, now § 1502 of the Act is found in Ind. Ann. Stat. § 52-1539a (Burns 1964). The Employment Security Act was Ind. Acts 1947, Ch. 208, now Indiana Code of 1971 (IC 1971), 22-4-1-1 *et seq.*

Claimant made timely request for a hearing before a referee who reversed the deputy's determination of ineligibility. The referee found:

". . . that the job offer from a base-period employer was of new work inasmuch as there was a difference in type of janitorial job and job was on a full-time basis rather than on claimant's experience as a part-time employee for two months back in August of 1969, while working for Allisons at the time. Claimant, therefore, does not come under the disqualifying provision for failing to accept work which was essentially somewhat different and under different conditions than he had previously worked for the base-period employer."

Ayres appealed to the Review Board which made the following findings, conclusions, and decision:

"FINDINGS AND CONCLUSIONS: The Review Board finds that claimant was in an indefinite layoff status from his job with another employer from May 15, 1970, to September 10, 1970.

"It further finds that claimant received $59.57 weekly in sub pay and $40 a week in unemployment compensation benefits for the weeks ending May 30, 1970, and June 6, 1970.

"It further finds that claimant was referred by the Division on June 9, 1970, to a base period employer (employer herein) for work as a porter at $2 hourly for a 40-hour week.

"It further finds that the job offered was substantially the same or better than his previous work with this employer at the same rate of pay.

"It further finds that claimant refused the job offer because he would lose money due to the difference in what the job paid and the amount he was receiving in sub pay and unemployment compensation benefits.

"It further finds that claimant has placed a limitation on the job he will accept to one paying more than $100 a week take home pay.

"The Review Board concludes that claimant has failed to show that the job offered by a base period employer involved undue risk to his health, safety, or morals; that he would be unable physically to perform the work; and that

the job offered was not within his prior training and experience.

"It further concludes that claimant failed without good cause to accept an offer of suitable work made by a base period employer within the meaning of the Act.

"DECISION: The referee's decision dated September 21, 1970, is hereby reversed this 5th day of March, 1971. Claimant's benefit rights are suspended as of June 9, 1970, and thereafter until he earns $400 or more in employment as defined by the Act."

The Review Board apparently look on paragraph (a) of § 1502 of the Employment Security Act, also Ind. Ann. Stat. § 52-1539a (Burns 1964) as arbitrarily restricting the division (in determining whether offered work is suitable) to a consideration of those (and only those) matters specifically enumerated therein.[8] That viewpoint finds some support in the following dictum from *Jackson* v. *Review Board* (1954), 124 Ind. App. 648, 658, 120 N. E. 2d 413, wherein we said:

> "It must be recognized, of course, that where work is found for and offered to a claimant, which the division finds to be suitable and to meet the requirements of § 52-1539a as to health, morals, travel distance, pay rate, etc., the claimant cannot arbitrarily set up his own conditions, desires, likes, dislikes, and other personal and selfish factors as reasons for refusal to accept the offered employment and, at the same time, claim eligibility for benefits. Such is not the purpose and intent of the act."

Insofar as that *dictum* suggests that offered work is not rendered unsuitable merely because the offeree has a purely whimsical preference for some other type of work we see nothing wrong with it, but insofar as it suggests that the so-called "requirements" of Ind. Ann. Stat. § 52-1539a (Burns 1964) are the only matters which can be considered in any determination of suitability we disapprove. The statute clearly does not say that. It says merely that "the division shall consider" the matters which it then lists,

8. These "requirements" and the pertinent words of the statute (§ 52-1539a) are quoted ante, p. 497.

but it nowhere says that other things cannot be considered. In fact paragraph (b), which immediately follows it, lists three conditions not included in (a) and makes each of the three an aribtrary condition of unsuitability.[9] Except for these arbitrary criteria (and the proviso), nothing in the statute requires any administrative fact-finder to ignore reality; to find that work offered is suitable when in reality it is highly unsuitable. Nothing in the act says that the certainty of economic injury to the offeree is any less an element of unsuitability than is the risk of injury to his health, safety and morals.

Nor is the Board's finding "that the job offered was substantially the same or better than his previous work with this employer" either required or authorized by the proviso of paragraph (a), as applied to the basic undisputed facts of the case, especially the facts from which the Board found "that claimant refused the job offer because he would lose money." Claimant did not lose money at "his previous work with this employer." Quite to the contrary, he made money. That is a condition of the prior employment which is no longer "substantially the same."

To find that the money-losing job offered was the same or better than the previous money-making work the Board must have assumed that only the terms and conditions under the direct control of the offering employer could be considered. The proviso itself requires consideration of a claimant's bona fide change of residence and we see no

9. "(b) Notwithstanding any other provisions of this act [§§ 52-1525—52-1563b], no work shall be deemed suitable and benefits shall not be denied under this act to any otherwise eligible individual for refusing to accept new work under any of the following conditions: (a) if the position offered is vacant due directly to a strike, lockout, or other labor dispute; (b) if the remuneration, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality; (c) if as a condition of being employed the individual would be required to join a company union or to resign from or refrain from joining a bona fide labor organization. [Acts 1947, ch. 208, § 1502, p. 673; 1953, ch. 177, § 15, p. 626; 1957, ch. 261, § 2, p. 615.]"

reason why other bona fide changes of employment conditions personal to the claimant cannot also be considered.

The decision of the Review Board is reversed and the case remanded for further proceedings not inconsistent with the views expressed in this opinion.

Reversed and remanded.

Hoffman, C. J., Sharp and Staton, JJ., concur.

NOTE.—Reported in 273 N. E. 2d 869.