Janice S. RICHARDSON, Appellant
(Plaintiff Below),

v.

REVIEW BOARD OF the INDIANA EM-
PLOYMENT SECURITY DIVISION,
Appellee (Defendant Below).

No. 2–183A7.

Court of Appeals of Indiana,
Second District.

Aug. 23, 1984.

Lesley M. Guyton, Lafayette, for appellant.

Linley E. Pearson, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Janice S. Richardson (Richardson) appeals the decision of the Indiana Employment Security Division Review Board (Review Board) which adopted an appeal referee's determination that she was ineligible to receive unemployment benefits under I.C. 22–4–15–2 (Burns Code Ed.Supp.1982) because she refused an offer of suitable employment without good cause. Richardson contends that the Board's decision is contrary to law.

Richardson had been employed as an external grinder by the Fairfield Manufacturing Company for more than three years when, on June 1, 1982, Fairfield placed Richardson on indefinite layoff. During this time, Richardson had worked the second shift, from 3:00 P.M. to 11:00 P.M. Shortly after her layoff, Richardson applied for and received unemployment benefits of $99 per week. On September 30, 1982, the Employment Security Division of Lafayette referred Richardson to a company named Pakco, located in Montmorenci, Indiana, some ten miles from Richardson's home, to interview for a position as a production worker on the second shift. The position paid $3.70 per hour and time and a half for any hours in excess of forty per week. At her Pakco interview, Richardson was informed that the Pakco employees were temporarily working seven days a week in overtime shifts, and that she would be required to do likewise, the duration of which was indefinite.

The position with Pakco was offered to Richardson and she refused it. As a result, the deputy claims officer of the Employment Security Division suspended Richardson's unemployment benefits. The deputy claims officer determined that Richardson's refusal was "due to the rate of pay," (Record at 9) and that she had therefore refused an offer of suitable work for personal reasons and without good cause. The appeals referee upheld the deputy's determination, making the following findings:

"FINDINGS OF FACT: The evidence presented indicates that the facts are as follows: The claimant was previously employed as an external grinder, and was indefinitely laid off on June 1, 1982. The claimant does not have a reasonable assurance of re-employment with the prior employer. The claimant has not worked since her layoff in June, 1982. The testimony indicates that there is little or no work available in the area which is similar to that previously performed by the claimant. On September 30, 1982, an employer offered the claimant an available job as a production worker involving the manufacture of styrofoam packing. The claimant was informed that her hours of work would be from 3:00 p.m. to 11:00 p.m. and that her normal shift would be Monday through Friday. The employer indicated that the rate of pay was $3.70 an hour. The employer also indicated that at that point employees were required to work seven days a week. The employer informed the claimant that she would receive time and a half for hours worked during a week in excess of 40. The claimant was fully capable of performing the work offered. The claimant refused the job offer because she was dissatisfied with the amount of the hourly wage. The evidence is not persuasive that the wage offered was substantially less favorable

than that prevailing for similar work in the locality. The claimant has indicated that accepting the job would have resulted in her incurring additional expenses including transportation and babysitter expenses. The work place is located about ten miles from the claimant's residence. Babysitter expenses would have amounted to about $7.00 per working day. The claimant's prior employment paid an hourly wage substantially in excess of that offered the claimant on September 30, 1982.

CONCLUSION: The claimant refused an offer of available employment. The claimant has not worked since June 1, 1982, and has no sifnificant [sic] prospect of returning to work for her prior employer. The claimant was fully capable of performing the work offered. The job offered the claimant constitutes suitable employment. The claimant's dissatisfaction with the wage offered does not, under these circumstances, constitute good cause for refusing work. The evidence is not persuasive that the wage offered the claimant is substantially less than that prevailing in the community for similar work. Therefore, the claimant refused an offer of suitable work without good cause as provided in Chapter 15, Section 2(2) of the Act." Record at 28–29.

After a review of the appeals hearing transcript, the Review Board adopted the referee's findings and conclusions, affirming the decision.

On appeal before this court, Richardson contends that the offered work was both unsuitable, and that she refused it with good cause.

## I.

### SUITABILITY OF WORK

Pursuant to I.C. 22–4–15–2, a claimant of unemployment compensation becomes ineligible to receive further unemployment benefits if "suitable" employment is offered and the claimant "fails without good cause" to accept the offered work. I.C. 22–4–15–2(a) specifies factors which must

be considered by the Review Board in determining whether offered work is suitable for a particular individual. It states:

"In determining whether or not any such work is suitable for an individual, the division shall consider the degree of risk involved to such individual's health, safety and morals, his physical fitness and prior training and experience, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence; Provided, however, That work under substantially the same terms and conditions under which he was employed by a base period employer, which is within his prior training and experience and physical capacity to perform, shall be deemed to be suitable work unless the claimant has made a bona fide change in residence which makes such offered work unsuitable to him because of the distance involved."

Subsection (b) of I.C. 22–4–15–2 sets forth four work conditions which, as a matter of law, render work unsuitable. Richardson would bring herself within the second such condition:

"Notwithstanding any other provisions of this article no work shall be deemed suitable and benefits shall not be denied under this article to any otherwise eligible individual for refusing to accept new work under any of the following conditions:

*    *    *    *    *    *

(2) if the remuneration, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for a similar work in the locality;"

In making its determination, the Review Board must consider each of the factors enumerated in I.C. 22–4–15–2, and must specifically state what consideration it accorded each of these factors. Furthermore, the factors found in I.C. 22–4–15–2 are not exhaustive. This court has recognized, as an additional factor, the "certainty of economic injury" which, if raised by

the appellant, must be given similar consideration. *Ball v. Review Board of the Indiana Employment Security Division* (2d Dist.1971) 149 Ind.App. 494, 273 N.E.2d 869.

Richardson contends that the Review Board failed to consider, in particular, two suitability factors:

(1) That acceptance of the offered work would have resulted in economic injury, and

(2) That the remuneration for the offered work was substantially less favorable than that prevailing in the locality for similar work.

(A)

CERTAINTY OF ECONOMIC INJURY

Richardson relies upon *Ball v. Review Board of the Indiana Employment Security Division, supra,* 273 N.E.2d 869, for the proposition that she need not accept offered employment if to do so would result in economic injury. She maintains that the Review Board did not consider the economic injury she would suffer had she accepted the Pakco position. To the extent that the Review Board's findings and conclusions do not reflect that consideration was specifically given to the possibility of economic injury, she is correct. However, for reasons which follow, Richardson's economic injury argument must nonetheless fail as a matter of law, for she has unduly extended the holding of *Ball* to include her own situation.

Richardson reasons that acceptance of the Pakco position would result in economic injury because it would produce a *net wage* of approximately $71 per week, according to Richardson's formulation, which is $28 less than the $99 per week she received in unemployment compensation. Richardson arrives at this conclusion by first calculating her gross wages for a forty hour week, which at $3.70 per hour, would yield $148. From that figure, she subtracts her estimated weekly federal and state income taxes, along with her social security taxes, totaling approximately $22 per week. This produces a take-home pay of $126 per week. From that figure, she subtracts her weekly babysitting expenses of $35 and her estimated weekly travel expenses of $20 for going to and from work, which leaves her with $71 per week—$28 less than the weekly unemployment benefit received when not working. Richardson contends that the babysitting and travel expenses are "mandatory work-related expenses," (Appellant's Brief at 12) and therefore must be part of the calculation in determining whether economic injury will result.

While Richardson might think this formulation quite justifiable, it is not supported by the law in this state and it extends the test for economic injury, as set forth in *Ball, supra,* beyond the factual confines of that case. The claimant in *Ball* had refused offered employment which would have produced *gross wages* of $80 per week—almost $20 per week less than the amount he received in gross unemployment benefits. Therefore, the "certainty of economic injury" recognized in *Ball* was premised upon a comparison of *gross wages* with *gross benefits*. There is no suggestion in *Ball* that a similar result would inure from a comparison of *net wages* with gross benefits. Furthermore, were we to recognize a formulation in which net wages might be a component in determining the "certainty of economic injury", it is altogether uncertain as to which deductions— or in Richardson's words, "mandatory work related expenses"—might be allowed. We find no rationale which would allow the deduction of such extraneous expenses as babysitting and transportation costs. Indeed, to permit such a calculation would, in our view, invite a plethora of assertedly mandatory deductions. A decision of this nature is more appropriately a matter of public policy. As such, it is within the domain of the legislature, and more aptly decided after careful consideration and public debate. Therefore, we decline Richardson's invitation to expand the "certainty of economic injury" test beyond a strict comparison of gross wages and gross benefits. Because the offered Pakco position

would have yielded gross wages in excess of Richardson's gross unemployment benefits, it was not employment which was rendered unsuitable by virtue of a resultant economic injury.

### (B)

### LOCALLY PREVAILING REMUNERATION FOR SIMILAR WORK

Richardson contends that the Review Board did not give proper consideration to whether the wages of the Pakco position were substantially less favorable than the prevailing remuneration in the locality for similar work. She urges that a comparison of her previous wage of over $7.00 per hour with the offered wage of $3.70 per hour mandates a finding that the offered employment was unsuitable.

■ In this regard, we would note, initially, that the record before us contains no evidence of Richardson's previous hourly wage rate. It contains only a statement of gross wages received during the base period. More importantly, however, there is evidence of record that Richardson's previous employment as an external grinder is in no way similar to the position offered by Pakco, although both might broadly be characterized as production work. Therefore, it is inappropriate to consider Richardson's previous wage rate as evidence of the locally prevailing wage rate for work similar to the offered employment.

■ The Review Board found that "the evidence is not persuasive that the wage offered the claimant is substantially less than that prevailing in the community for similar work." Record at 29. A close scrutiny of the record reveals, however, that it is devoid of evidence regarding pre-

vailing wages for similar work. Therefore, to state that "the evidence is not persuasive" misstates reality, in this instance, where no evidence of record exists.[1] The Board is required by I.C. 22–4–15–2(b)(2) to consider prevailing community wage rates for similar work as one of the determinants of suitability. In the absence of factual evidence of this nature, the Board could not have given proper consideration to the matter. Because the Board's conclusion regarding the prevailing wage rate is not founded upon evidence of record, we must remand to the Board for reconsideration of this issue.

■ In a related argument, Richardson asserts that a seven-day work week, even though temporary and of indefinite duration, is a work condition substantially less favorable than that prevailing in the locality. We decline to address this contention because Richardson specifically stated, during her appeals hearing, that she would have accepted the Pakco position notwithstanding the temporary overtime hours had it not been for the low rate of pay which was her primary concern. Because the temporary seven day work week was acceptable to Richardson at the time of the hearing, she may not now, on appeal, protest that it was unsuitable.

### II.

### GOOD CAUSE

Richardson maintains that the Review Board's determination that she did not have good cause to refuse the Pakco position is contrary to the law and the facts.

■ We observe that the matter of whether one has good cause to refuse offered employment—a matter which, in our

1. As a related matter, we would admonish the Review Board that findings of basic fact must be stated in definitive rather than tentative terminology. The predicatory language used by the Board, "that the evidence indicates ...," is neither helpful nor instructive in ascertaining and stating the basic facts. Far preferable is language to the effect that "the Board *finds* that the *facts are* A, B, C, ...." Likewise, findings of fact which contain statements such as "Mr. Jones testified so and so ...," or that "the Industrial Board finds that Dr. Smith testified so and so ...," are *not* findings of basic fact in the spirit of the requirement. *See Perez v. United States Steel Corporation* (1981) Ind., 426 N.E.2d 29, 33, wherein the supreme court advised the Industrial Board that "statements to the effect that the evidence revealed such and such ..." were not proper format for fact findings.

view, encompasses considerations of a more personal and subjective nature—need not be considered unless the more objective component of the two-part test—that of whether the work is "suitable" for a particular individual—has been determined and resolved in favor of suitability. This is so because a claimant would always have "good cause" to refuse unsuitable work. Therefore, only after the work has been determined to be suitable does the question of good cause for refusal become relevant.

Richardson argues that she had good cause to refuse the Pakco position because the hours offered—i.e., the second shift—combined with the required overtime—i.e., seven days a week—would have interfered with the performance of her parental obligations. She further urges that the additional transportation cost, when considered in light of the offered wage, also constitutes good cause for refusal.

▆▆▆ In support of her position, Richardson cites cases in which this court has determined that it was error to deny unemployment compensation to a claimant who, due to parental obligations or child care considerations, has placed reasonable restrictions on the hours in which she is available for work, so long as the restrictions do not so circumscribe the claimant's availability as to effectively remove her from the labor market. *See, e.g., Hacker v. Review Board of the Indiana Employment Security Division* (2d Dist.1971) 149 Ind.App. 223, 271 N.E.2d 191; *Renwanz v. Review Board of the Indiana Employment Security Division* (1st Dist.1971) 148 Ind.App. 540, 267 N.E.2d 844. Richardson further contends that the Review Board has, as in *Martin v. Review Board of the Indiana Security Division* (4th Dist.1981) Ind.App., 421 N.E.2d 653, erroneously applied an incorrect standard of "good cause", having confused "good cause" for voluntarily leaving employment with "good cause" for refusing offered employment. Whereas "good cause" for leaving employment under I.C. 22–4–15–1 embodies a strict standard in which the cause must be directly work-related, "good cause" for re-

fusing offered employment under I.C. 22–4–15–2 encompasses a broader range of personal considerations upon which a claimant may condition the acceptance of new work. *Thomas v. Review Board of the Indiana Employment Security Division* (1979) 271 Ind. 233, 391 N.E.2d 1127, *rev'd on other grounds* (1981) 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624.

Despite Richardson's contentions that child care considerations and transportation problems were her primary reasons for refusing the Pakco position, a review of the hearing transcript reveals otherwise. The record contains no evidence of child care or transportation difficulties other than the additional cost to Richardson for these expenses. Richardson's Application for Work form, which she filed with the Employment Security Division, contained no hour restrictions on her availability for work due to child care or for any other reason. In fact, the form indicated that she was available for production work on any shift: first, second or third. Furthermore, Richardson specifically stated at three different times during the course of the hearing before the appeals referee that "money" was the "big issue." Record at 16, 17. Finally, Richardson stated that she would have accepted the position, notwithstanding the overtime hours, had it not been for the unacceptable wages. Therefore, this is not a case such as *Hacker, supra, Renwanz, supra,* or *Martin, supra,* in which the claimants, at the very outset, asserted their parental obligations or transportation problems as personal restrictions upon which acceptance of employment was contingent. Just as the Review Board determined, Richardson's cause for refusal of the offered employment was the rate of pay.

▆▆▆ Because Richardson's asserted causes appear to have been formulated after the fact of refusal and were not her primary reason for declining employment with Pakco, we find no issue for review with respect to "good cause." Richardson does not assert that an unacceptable rate of pay may constitute "good cause" for refusing offered employment.

We reverse and remand to the Review Board for reconsideration and factual determination as to whether the offered wage was substantially less favorable than that prevailing in the community for similar work, such as would render the Pakco position unsuitable.

BUCHANAN, C.J., concurs with separate opinion.

SHIELDS, J., concurs in part, dissents in part, with separate opinion.

BUCHANAN, Chief Judge, concurring.

I concur in the result in this case. I do *not* agree that the certainty of economic injury is ever a factor to be considered in determining the suitability of offered employment.

My conclusion is easily reached by looking no further than the effect of the statute's use of the term "shall" and the rule of *expressio unius est exclusio alterius.* The crucial portions of Indiana's unemployment compensation legislation read as follows:

"(a) In determining whether or not any such work is suitable for an individual, the division *shall* consider the degree of risk involved to such individual's health, safety and morals, his physical fitness and prior training and experience, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence. However, work under substantially the same terms and conditions under which he was employed by a base-period employer, which is within his prior training and experience and physical capacity to perform, *shall* be deemed to be suitable work unless the claimant has made a bona fide change in residence which makes such offered work unsuitable to him because of the distance involved."

Ind.Code 22-4-15-2(a) (1982) (emphasis supplied) [hereinafter referred to as the suitable work subsection]. And,

"(b) Notwithstanding any other provisions of this article, no work *shall* be deemed suitable and benefits *shall* not be denied under this article to any otherwise eligible individual for refusing to accept new work under any of the following conditions:

(1) if the position offered is vacant due directly to a strike, lockout, or other labor dispute;

(2) if the remuneration, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality;

(3) if as a condition of being employed the individual would be required to join a company union or to resign from or refrain from joining a bona fide labor organization;

(4) if as a condition of being employed the individual would be required to discontinue training into which he had entered with the approval of the board."

IC 22-4-15-2(b) (1982) (emphasis supplied) [hereinafter referred to as the unsuitable work subsection].

These two subsections direct the Review Board of the Indiana Employment Security Division (the division) with great particularity as to what is meant by "suitable" employment. By use of the term "shall", the subsections serve as mandatory limitations on the administrative agency's decision-making powers. *See* 1A C.D. SANDS, SUTHERLAND STATUTORY CONSTRUCTION § 25.04 (1972). According to the unsuitable work subsection, there are four situations in which work can never be deemed suitable; whereas, the suitable work subsection enumerates specific factors which must be considered by the division in judging suitability of all remaining offered employment.

The majority, following the conclusion reached in *Ball v. Review Bd. of the Ind. Employment Sec. Div.*, (1971) 149 Ind.App. 494, 273 N.E.2d 869, determines the factors listed in the suitable work section are not exclusive—a conclusion reached without reason or authority. Use of the word "shall" not only mandates the prescribed actions, but also "impl[ies] a negative of anything contrary or alternative to [its]

requirement." 1A C.D. SANDS, *supra* § 24.04, at 296. And, the oft-cited maxim *expressio unius est exclusio alterius* dictates that, "[w]hen the law is in the affirmative that a thing should be done by certain persons or in a certain manner, this affirmative manner contains a negative that it shall not be done by other persons or in another manner." *State v. Home Brewing Co.*, (1914) 182 Ind. 75, 95, 105 N.E. 909, 916. *See generally* 2A C.D. SANDS, *supra* § 57.10.

These clear-cut indicators of legislative intent convince me the division may not embroider upon the intricate scheme already devised by the legislature to determine when offered employment is suitable. The only rationale submitted by the *Ball* court for its contrary conclusion is that, because the unsuitable work subsection lists several "arbitrary conditions of unsuitability", the suitable work subdivision is not an exclusive formula for judging work suitability. *Ball, supra*, at 500, 273 N.E.2d at 873. Rather than being merely "arbitrary" exceptions to the work suitability subsection, the unsuitable work subsection reveals the legislature's intent to specifically limit the division's discretionary power to define suitable work.

In an analogous case, it was necessary for the First District to determine whether the Center Township Trustee had the power to accumulate annual and sick leave for employees. Because the legislature had expressly granted such powers to similarly situated persons, application of *expressio unius est exclusio alterius* meant the legislature intended to deny the Center Township Trustee this authorization. *Osborne v. State*, (1982) Ind.App., 439 N.E.2d 677. Likewise here, by enumerating when the division must find that work is unsuitable and what must be considered in all other cases to determine suitability, the legislative intent is established that the division is not authorized to consider any other factors. So, certainty of economic injury cannot be considered as a work suitability factor because it is not enumerated in the suitable work subsection.

SHIELDS, Judge, concurring in part, dissenting in part.

I concur in part, and dissent, in part.

I vote to remand,[1] not only for "reconsideration and factual determination as to whether the offered wage was substantially less favorable than that prevailing in the community for similar work," but also for "reconsideration and factual determination" as to whether Richardson's acceptance of the Pakco position results in the certainty of economic injury.

The purpose of unemployment compensation is to provide benefits to persons unemployed through no fault of their own and, at the same time, to encourage stabilization of employment once obtained. I.C. 22-4-1-1 (Burns Code Ed., 1974). The intent, then, is to avoid the "great hazard of our economic life" described as economic insecurity. *Id.* I do not equate this expressed intent with intent of guaranteeing to each

---

**1.** I direct the Review Board's attention on remand to the provisions of I.C. 22-4-15-2(3) (Burns Code Ed., Supp.1984) outlining the monetary consequences of failing to accept suitable employment:

"With respect to benefit periods established on and after July 6, 1980, the ineligibility shall continue for the week in which the failure occurs and until the individual earns remuneration in employment equal to or exceeding the weekly benefit amount of his claim in each of eight (8) weeks. If the qualification amount has not been earned at the expiration of an individual's benefit period, the unearned amount shall be carried forward to an extended benefit period or to the benefit period of a subsequent claim.

. . . .

If an individual failed to apply for or accept suitable work as outlined in this section, the maximum benefit amount of his current claim, as initially determined, shall be reduced by twenty-five percent (25%). If twenty-five percent of the maximum benefit period is not an even dollar amount, the amount of such reduction shall be raised to the next higher dollar amount. When twenty-five percent (25%) of the maximum benefit amount, as initially determined, exceeds the unpaid balance remaining in the claim, such reduction shall be limited to the unpaid balance."

unemployed worker a minimum weekly income of not less than their benefit amount regardless of any other factors. Nevertheless, I must disagree with Judge Sullivan's restricting the consideration of the factor of certainty of economic injury to a comparison of gross wages with gross benefits. In my opinion, the holding in *Ball v. Review Board of the Indiana Employment Security Division*, (1971) 149 Ind.App. 494, 273 N.E.2d 869, and the language of the act requires a comparison of gross benefits with what I shall refer to as "realized income", along with a consideration of the other statutory factors. I define realized income as gross wages less amounts for such deductions and/or expenses as the Board in the exercise of its administrative expertise and prerogative, deems appropriate, limited only by the requirement the expenses and/or deductions be uniquely and directly related to the offered employment and/or generated by the offered employment.

I reach this conclusion although I recognize *Ball* was decided upon facts which involved offered employment that had a *gross* wage less than the gross unemployment benefits. Nevertheless, *Ball* also states *bona fide* employment conditions personal to the claimant are appropriate considerations in determining suitability, as opposed to only those terms and conditions under the direct control of the offering employer. *Ball*, decided in 1971, has not been the subject of legislative repeal.

Further, I.C. 22–4–15–2 (Burns Code Ed., Supp.1984) supports a consideration of a comparison of factors other than gross wages to gross benefits. The suitability limitation of offered employment is all but abolished for extended benefits.[2] For example, with limited exceptions, suitable work is any work within the individual's capacity under I.C. 22–4–15–2(c). One such exception, however, is employment which offers a gross average weekly remuneration less than the average weekly benefits plus any supplemental unemployment compensation benefits; such employment is not suitable under I.C. 22–4–15–2(d). Because the suitability limitation for extended benefits is severely reduced, and yet employment whose gross wage is less than gross benefits is nevertheless unsuitable, a reasonable conclusion is a comparison of realized income with gross benefits is appropriate for regular benefits.

Additional support for considering realized income as opposed to gross wages is found in the case law involving "good cause" for refusing employment under I.C. 12–4–14–2.[3] Personal reasons may constitute good cause for refusing employment if they do not effectively remove a claimant from the labor market. *Martin v. Review Board*, (1981) Ind.App., 421 N.E.2d 653. In *Martin* this court expressly approved the Review Board's consideration of child care considerations and transportation problems, *i.e.*, personal problems, as pertinent to the issue of good cause. While *Martin* is not authority for the suitability issue presented by Richardson it does stand for the proposition an employee's personal problems are recognizable within the statutory scheme of unemployment benefits. A realized income less than gross benefits certainly may fall within the concept of a "personal problem". Thus, *Martin* recognizes requiring an employee to accept employment under that condition is contrary to the intent and purpose of the unemployment compensation act which allows employees to restrict or place necessary conditions upon their acceptance of new employment, which encourages the continuation of that employment once accepted. *Martin.*

I emphasize a comparison of realized income with gross benefits is but one of several factors to be considered and balanced by the Board in reaching its decision

---

**2.** For an explanation of the extended benefits see I.C. 22–4–2–34 (Burns Code Ed., Supp.1984) and I.C. 22–4–14–6 (Burns Code Ed., Supp. 1984).

**3.** This liberal standard of good cause is distinct from the strict standard of good cause for voluntarily leaving employment under I.C. 22–4–15–1 (Burns Code Ed., Supp.1984). *See, Martin v. Review Board*, (1981) Ind.App., 421 N.E.2d 653.

as to suitability. Accordingly, when balanced with these other factors, its impact will undoubtedly vary. For example, its impact may well be minimal or non-existent if the period of unemployment is lengthy and/or the prospect for securing local work in the customary occupation non-existent. Nevertheless, it is entitled to consideration.

I vote to reverse and remand to the Review Board for further proceedings on the question of suitability giving consideration to the issue of whether the offered wage was substantially less favorable than that prevailing in the community for similar work and whether Richardson suffered the certainty of economic injury. In all other respects, I concur.