ORLE WAYNE BOWMAN v. TROY LAUNDERERS & CLEANERS, INC. AND STATE DEPARTMENT OF SOCIAL SECURITY, DIVISION OF EMPLOYMENT AND SECURITY.[1]

May 14, 1943.

No. 33,397.

[1] Reported in 9 N. W. (2d) 506.

*Elmquist, Felhaber & Elmquist,* for appellant.

*Samuel H. Bellman* and *Perry Scheftel,* for claimant-respondent.

*J. A. A. Burnquist,* Attorney General, and *Kent C. van den Berg* and *Knute Stalland,* Assistant Attorneys General, for respondent State Department of Social Security, Division of Employment and Security.

HENRY M. GALLAGHER, CHIEF JUSTICE.

Claimant's employment in the dry-cleaning department of Troy Launderers & Cleaners, Inc. (hereinafter referred to as employer) terminated December 6, 1941. On December 8 he registered with the state division of employment and security for employment and filed a claim for unemployment benefits. The employer objected to the payment of benefits to claimant on the ground that it had offered him work at $20 per week and that he had refused to accept it. The division determined that claimant was disqualified under Minn. St. 1941, § 268.09(4), (Mason St. 1941 Supp. § 4337-27[4]), for failure to accept available, suitable work. Claimant duly appealed to an appeal tribunal, which, by a two-to-one decision, vacated the division's decision and allowed the claim for unemployment compensation. On appeal to the director of the division, the findings of fact and decision of the appeal tribunal were affirmed by order of the deputy director dated August 7, 1942. The appeal to this court was taken by the employer from that order.

It is asserted that the deputy director erred in upholding the

decision and findings of the appeal tribunal to the effect that claimant was not disqualified by reason of his failure to accept available, suitable work, on the ground that the findings and decision are not in accordance with the evidence and the law.

The evidence supports findings of the following facts: Claimant was employed by the employer as a steam cleaner in the dry-cleaning department for about five years prior to December 6, 1941. On November 28, 1941, he received a notification by letter from the employer that one week from that date it would not be able to provide him with work in that department until resumption of "better dry cleaning volume." In the same letter the employer advised claimant that it had made arrangements to give him work such as he previously had during off seasons and asked him to report the next week "for this change over to another department." On December 3 claimant conferred with an officer of the employer and was informed that his work for the off season would consist of light garage work, stock work, and some truck driving. His wage at his regular work approximated $24 per 40-hour week. The off-season work offered him would have netted him $20 for a 48-hour week. Claimant is not experienced or trained as a mechanic, nor is he licensed as a truck driver. He is a member of the Laundry Workers and Cleaners International Union, but is not affiliated with any mechanics' or drivers' unions. Before giving his employer a definite answer whether or not he would accept the work offered, claimant sought the counsel of the business representative of the union to which he belonged. He was advised that if he accepted the work and engaged himself as a mechanic or truck driver he would be violating an agreement between his union and other craft unions in the city and that he might be liable to expulsion from his union for so doing. He then reported to his employer that he would not accept the offered job.

Claimant admits that during the off seasons of other years he had worked in other departments at different rates of pay; that the off season is usually about two and one-half or three months long; and that each time when the dry-cleaning business again

accelerated he was put back into his position as a steam cleaner.

The only question is whether the director could reasonably conclude that the work offered was not suitable or that claimant had good cause for not accepting it. Minn. St. 1941, § 268.09 (4), (Mason St. 1941 Supp. § 4337-27[4]), provides:

"(a) In determining whether or not any work is suitable for an individual, the director shall consider the degree of risk involved to his health, safety, and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects of securing local work in his customary occupation, and the distance of the available work from his residence;

"(b) Notwithstanding any other provision of sections 268.03 to 268.24, no work shall be deemed suitable, and benefits shall not be denied thereunder to any otherwise eligible individual for refusing to accept new work under any of the following conditions:

\* \* \* \* \*

"(2) If the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality;"

We believe that the foregoing facts, which are reasonably sustained by the evidence, permit the conclusion reached by the director that claimant is not disqualified for failure to accept suitable, available work offered. Section 268.09 (4) (a), *supra,* provides that the director shall be guided in his determination of whether work is suitable or not by consideration for the individual's "safety, and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects of securing local work in his customary occupation." In the instant case the employment offered was less desirable from the point of view of wages and hours. It is also clear that claimant was not qualified or trained as either a mechanic or a truck driver. There was testimony that in all probability he could very soon find employment in his special trade because of the shortage of trained

men, which evidence tends to justify his nonacceptance of employment in other lines. These facts are amply established by the evidence and are sufficient to permit the conclusion reached by the director.

Appeals to this court from decisions of administrative bodies are governed by the rules laid down in State ex rel. Dybdal v. State Securities Comm. 145 Minn. 221, 225, 176 N. W. 759, 761:

"The review which the court can make of a finding of the commission is limited. It cannot disturb the commission's determination because it does not agree with it. It can only interfere when it appears that the commission has not kept within its jurisdiction, or has proceeded upon an erroneous theory of the law, or unless its action is arbitrary and oppressive and unreasonable so that it represents its will and not its judgment, or is without evidence to support it. This principle of review is applied when it is sought to review by mandamus or on statutory appeal the exercise of the various functions committed by the legislature to different boards and commissions."

Affirmed.

[1]Reported in 9 N. W. (2d) 505.