## GEORGE R. RICHARD v. FEDERAL CARTRIDGE CORPORATION AND VICTOR J. CHRISTGAU.[1]

April 6, 1944.

No. 33,670.

*William D. Gunn,* for relator.

*J. A. A. Burnquist,* Attorney General, and *K. D. Stalland,* Assistant Attorney General, for respondent Victor J. Christgau.

[1]Reported in 14 N. W. (2d) 118.

LORING, CHIEF JUSTICE.

*Certiorari* to review a determination by the director of the division of employment and security that claimant was disqualified from receiving benefits under the unemployment compensation law. Claimant was first disqualified by a claims examiner under Minn. St. 1941, § 268.09(1), (Mason St. 1941 Supp. § 4337-27[1]), on the ground that he voluntarily and without good cause discontinued his work. An appeal was taken to an appeal tribunal, as provided by statute, and an order was made setting aside the determination of the claims examiner but disqualifying claimant under § 268.09(2), (§ 4337-27[2]), on the ground that he was discharged for misconduct connected with his work. An appeal was then taken to the director, with a request for leave to submit additional testimony on the issue of discharge for misconduct. This request was denied, as the director was of the opinion that claimant was not discharged for misconduct but was disqualified from receiving unemployment compensation benefits under § 268.09(1) because he "voluntarily and without good cause discontinued his employment."

■ The first question is the scope of our review. L. 1943, c. 650, § 6(I)(2), amends Minn. St. 1941, § 268.10, subd. 9 (Mason St. 1940 Supp. § 4337-28[I]), as amended by L. 1941, c. 554, § 7(I), to read in part as follows:

"* * * The Supreme Court, on review taken under this section, shall have and take original jurisdiction and may reverse, affirm, or modify the decision reviewed, and enter such judgment as may be just and proper; and when necessary may remand the cause to the director for a new hearing or for further proceedings, with such directions as the court may deem proper."

The effect of the amendment is to change our review from direct appeal to *certiorari*. This language is substantially identical with Minn. St. 1941, § 176.62 (Mason St. 1927, § 4321), relating to appeals from the industrial commission. In construing this statute, we said in Lading v. City of Duluth, 153 Minn. 464, 469, 190 N. W. 981, 983:

"\* \* \* It is not there [in this court] examined or considered as an original question and with a view of determining the facts; the determination of the facts resting with the trial court or other tribunal to which the matter is committed, and the findings there made, unless clearly, or, as sometimes expressed, manifestly against the evidence, are conclusive and final."

See Engsell v. Northern Motor Co. 174 Minn. 362, 219 N. W. 293; Tomhave v. Galena, 180 Minn. 289, 230 N. W. 652.

Following this construction and applying it to the similar language in § 268.10, subd. 9, as amended by L. 1943, c. 650, § 6 (I) (2), there is no substantial change in the scope of our review under the unemployment compensation law. Bowman v. Troy Launderers & Cleaners, Inc. 215 Minn. 226, 9 N. W. (2d) 506. It is only the decision of the director that is here for review. Chellson v. State Div. of Employment and Security, 214 Minn. 332, 8 N. W. (2d) 42.

■ The evidence supports the following facts: Claimant was employed by respondent Federal Cartridge Corporation at the Twin Cities Ordnance Plant operated by it at New Brighton, Minnesota, from March 26 to September 17, 1942. On the latter date, he was "suspended" by the employer for alleged "insubordination, lack of interest in his work, absent too much, and lack of coöperation." There is testimony in the record to the effect that claimant was slow at his work, taking 33 to 35 minutes to perform an operation that should take only 12 to 13 minutes; was addicted to "horseplay"; slept at his machine; and had difficulties with other employes. He had been warned several times about his conduct.

According to the employer's policy, claimant was "suspended to the grievance committee" and on September 18 had a hearing before· that body. The committee told him that they would "see what we can do" and told him to go home. After three weeks off the job, claimant procured a position as janitor at the post office under civil service. While working there, he received a telephone call from Mr. Melloy, a member of the grievance committee, and was told that he could return to work at the ordnance plant. Claimant did not accept this offer, but stated that he had not been working

at the post office long enough to know whether he liked the job or not. At Mr. Melloy's suggestion, to "clear your records," claimant signed a resignation. Claimant admits these facts, but contends that they do not support a finding that he discontinued his employment voluntarily and without good cause.

It appears that the grievance committee made one further effort to offer claimant employment, but by then he had discontinued his work at the post office and was working for Brown & Bigelow. Again finding himself out of work, claimant sought the assistance of the U. S. Employment Service and was referred to the Twin Cities Ordnance Plant. Upon an examination of his record, he was not rehired. He then sought unemployment compensation, which gave rise to these proceedings.

We think that when claimant had an opportunity to return to work at the ordnance plant and did not do so the director was justified in concluding that claimant discontinued his employment "voluntarily and without good cause," within the meaning of § 268.09 (1). The condition of the record is such as to leave some doubt whether the first offer to return to work was made before or after claimant went to work at the post office. In our view, it is immaterial. His refusal to return and his voluntary resignation justify the findings of the director.

The decision of the director is affirmed.