PACIFIC MILLS vs. DIRECTOR OF THE DIVISION OF EMPLOY-
MENT SECURITY & another
(and three companion cases [1]).

Essex.   November 3, 1947. — February 4, 1948.

Present: QUA, C.J., DOLAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Employment Security.   Words,* "Suitable employment."

In applying § 25 (c) of the employment security law, G. L. (Ter. Ed.)
c. 151A as appearing in § 1 of c. 685 of St. 1941, to the determination
of the question, whether an applicant for benefits failed without good
cause to accept "suitable employment" offered him, it was not error
of law for the director and the reviewing board to consider, among
other material factors, that the offered employment failed to utilize
the full skill and capacity of the worker, that the pay in the offered
employment was substantially less than he had been receiving, and
that, when the new employment was offered, the worker still had a
reasonable expectancy of securing employment of the grade for which
his capacity fitted him and had not had sufficient opportunity to
secure it.

Reading together §§ 24 (b) and 25 (c) of the employment security law,
G. L. (Ter. Ed.) c. 151A as appearing in St. 1941, c. 685, § 1, work
which is not "suitable" within § 25 (c) is not work for which the
employee is "reasonably fitted" within § 24 (b).

FOUR PETITIONS for review, filed in the District Court
of Lawrence, one on June 3, two on July 10 and one on Decem-
ber 23, 1946.

The cases were heard by *Daly,* J.

*J. T. Noonan,* (*E. E. Elder* with him,) for the petitioner.

*A. E. LoPresti,* Assistant Attorney General, (*J. A. Bren-
nan* with him,) for the respondents.

QUA, C.J.   In each of these cases the petitioner appeals
from a decision of the District Court of Lawrence which
affirmed a decision of the board of review in the division of
employment security of the department of labor and indus-

---

[1] All four petitions are brought by the Pacific Mills against the director.
In each of the four cases a second respondent is one of the petitioner's present
or former employees to whom unemployment benefits have been awarded
as stated in the opinion.

tries awarding unemployment benefits under the employment security law, G. L. (Ter. Ed.) c. 151A, as appearing in St. 1941, c. 685, § 1, as amended, to an employee or former employee of the petitioner, "if otherwise eligible." We interpret the quoted words to mean if eligible in respect to all matters in addition to those which were directly in issue before the board.

The appeals to this court are in accordance with G. L. (Ter. Ed.) c. 151A, § 42, as appearing in St. 1943, c. 534, § 6. See now St. 1947, c. 434. Under § 42 "the findings of the board of review as to the facts, if supported by any evidence, shall be conclusive, and the court shall render a decision or decree in accordance with such findings." See *Jordan Marsh Co.* v. *Labor Relations Commission*, 316 Mass. 748, 756. Questions of law are reviewable here.

The issue in each case is whether the employee is barred from benefits by a refusal to accept work offered by the petitioner as a substitute for that previously performed by the employee. The petitioner contends that the work offered was suitable and that the refusal to accept it is a bar. The interest of the petitioner in the matter is due to the fact that the amount of its contributions to the unemployment compensation fund is affected by the amount of unemployment benefits paid to its employees who are laid off.

The applicable provisions of the employment security law, G. L. (Ter. Ed.) c. 151A, as appearing in § 1 of c. 685 of St. 1941, are these: Section 24 provides, "An individual, in order to be eligible for benefits under this chapter, shall . . . (b) Be capable of and available for work and unable to obtain work in his usual occupation or any other occupation for which he is reasonably fitted . . . ." Section 25 provides, "No waiting period shall be allowed and no benefits shall be paid to an individual under this chapter for . . . (c) Any week in which an otherwise eligible individual fails, without good cause, . . . to accept suitable employment whenever offered him . . . . 'Suitable employment,' as used in this subsection, shall be determined by the director, who shall take into consideration whether the employment is detrimental to the health, safety or morals of

an employee, is one for which he is reasonably fitted by training and experience, including employment not subject to this chapter, is one which is located within reasonable distance of his residence or place of last employment, and is one which does not involve travel expenses substantially greater than that required in his former work." This section contains further provisions (required to be included to enable employers to receive credit for their contributions to the State unemployment fund against the Federal tax imposed upon them with respect to wages under U. S. C. [1940 ed.] Title 42, §§ 1101–1103) to the effect that no work shall be deemed suitable if the position offered is vacant because of a labor dispute, or if the remuneration and conditions of work are substantially less favorable than those prevailing for similar work in the locality, or if acceptance of the work would adversely affect the employee's membership in a labor organization. These last mentioned provisions are not here directly involved. In § 1 (r) (2) of the law the definition of "Total unemployment" includes inability to obtain "any suitable work."

In the case of the employee Dzioba there was evidence that she had been trained for office work at a business college; that she had worked in Boston in a credit department; that she had been doing clerical work for the Pacific Mills for two years before she was told there was less work and she would have to go; that at the time of the hearing she was working as stenographer and interviewer in "a credit office" in Lawrence; that the work offered by the Pacific Mills as a substitute for the clerical work she had been doing would have consisted of circulating through the shipping department, stapling tags to pieces of cloth that were piled on trucks or benches, recording yardages, counting them on an adding machine, and operating a numbering machine; and that the pay would be about the same as that which the employee had been getting, except that it would be by the day instead of a salary. The board held that it was unreasonable to force a skilled office worker at the beginning of a period of unemployment to accept work "much below her best skill."

The employee Lemieux had been making $45 to $50 a week as a weaver. The offered work as a winder would pay about $30. At the time of the hearing she was again working as a weaver. The board held that the employee lived in a city where there are "innumerable mills," and that she "should be given a reasonable opportunity to realize employment in her regular occupation as a weaver particularly when she had been unemployed for three days only."

In each of the Evlian and Sobon cases the employee was a skilled weaver when laid off. The offered employment was work of lower grade at substantially less wages. It was, or could have been, found that the employee had a reasonable expectancy of again securing high grade employment. The board held that the offered employment was not suitable.

From the foregoing it will be seen that the questions of law presented are in substance whether in determining the suitability of employment offered in place of that lost the board can consider (1) that the offered employment fails to utilize the full skill and capacity of the worker, (2) that the pay is substantially less than he has been receiving, and (3) that when the new employment is offered the worker still has a reasonable expectancy of securing employment of the grade for which his capacity fits him and has not had sufficient opportunity to secure it. The petitioner contends that none of these matters can be considered, and apparently further contends that no benefits can be awarded if the worker has refused any work which he is reasonably capable of performing.

If the law had not been changed since the first unemployment compensation law was enacted by St. 1935, c. 479, § 5, there would be a more substantial basis for at least a part of the petitioner's contention. The definition of unemployment in § 1 (o) of the law then included inability to obtain "any employment" and said nothing of suitability. Section 19 (c), which corresponded to the present § 25 (c), did mention suitable employment and defined it as "any employment not detrimental to the health, safety or morals of an employee, for which he is reasonably fitted by training and experience, including

employment not subject to this chapter, which is located within reasonable distance of his residence or last employment, and which does not involve travel expenses substantially greater than that required in his former employment." Under this definition it could with much reason be contended that the administrative agency could not consider such factors as the grade and pay of the work compared to the employee's abilities. But when the law was completely revised and reënacted by St. 1937, c. 421, suitability of the offered work became an element in the definition of unemployment in §1 (l), and in § 16 (d), which corresponded to the present § 25 (c), the Legislature, instead of itself defining "suitable employment," as it had in the 1935 act, provided substantially as in the present act that "suitable employment" should be determined by the commission (now by the director, subject to appeal to the board of review), which should "take into consideration" whether the employment was detrimental to health, safety, or morals, was one for which the employee was reasonably fitted by training and experience, was located within a reasonable distance, and did not involve substantially. greater travel expenses. It is evident that a material change was intended. Elements which had formerly been the sole criteria of "suitable employment," subject only to the requirements of Federal law hereinbefore stated, became merely factors to be taken into account by the commission (now director) along with all other pertinent factors which might reasonably enter into the determination as an issue of fact whether the offered employment could fairly be described as suitable. The wisdom of this liberalization of the law was, of course, a matter for legislative determination.

Under the present wording of the statute we cannot say that there was error of law in taking into account such matters as the skill and capacity of the worker, his accustomed remuneration, his expectancy of obtaining equivalent employment, and the time which he had had to obtain it. It may reasonably be thought that employment which requires a highly trained and skilled worker, who still has

a fair prospect of securing work in his own line, to step down into work of a substantially lower grade at substantially less pay before he has had a chance to look about him is not truly "suitable." Acceptance of such employment might conceivably condemn the worker permanently to a scale of employment lower than that to which his training, skill, and industry fairly entitle him. Suitability is not a matter of rigid fixation. It depends upon circumstances and may change with changing circumstances. Employment which may not be suitable while there is still a good present expectancy of obtaining other employment more nearly proportionate to the ability of the worker may become suitable if that expectancy is not realized within a reasonable time. Employment which may be unsuitable in a period of full employment may be suitable in a period of depression or of falling wages. We do not say that an employee may not, on pain of losing his benefits, be required to accept employment beneath his true capacity and at lower wages. We say only that as the law now reads the question is commonly one of fact and that there was no error of law and no arbitrary conduct on the part of the board in taking into account the elements which it did take into account. Whether the board allowed too great weight to these elements in the instant cases is a matter involved in the decision of a question of fact and is not for us. We cannot say that the findings are not supported by evidence. The Commonwealth has entrusted to the division of employment security the delicate task of administering the law with fairness to the employee on the one hand while faithfully preserving the safeguards of the law on the other hand. It is interesting to note that according to a table appended to the petitioner's brief the statutes of a large majority of the States expressly require or permit the administrative agency to take into account the factors which we construe our present statute as permitting our agency to take into account.

The petitioner apparently argues that § 24, dealing with eligibility for benefits, requires the employee to take any work "for which he is reasonably fitted" in the sense of

being competent to perform it, even if the work is not "suitable" under § 25 (c). We cannot agree. This contention as to the relation between the two sections involves the anomaly of saying that an employee, who, in order to be eligible under § 24 for any benefits at all, must be unable to get any work that he can perform, can nevertheless be deprived of benefits and penalized under § 25 (c) only when he fails to apply for or to accept "suitable" work. There was no intention to set up two inconsistent standards. The two sections must be read and construed together. Section 25 explains, amplifies and qualifies § 24. If the work offered is not suitable under § 25, we think it must be deemed not to be work for which the employee is reasonably fitted under § 24.

In each case the decree of the District Court affirming the decision of the board of review and dismissing the petition is affirmed.

*So ordered.*