No. 46,373

The Boeing Company, *Appellant,* v. State of Kansas Employment
Security Board of Review and Ernest L. Wesley, *Appellees.*

(496 P. 2d 1376)

Opinion filed May 6, 1972.

*William H. Dye,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita,
argued the cause, and *Robert N. Partridge,* of Wichita, was with him on the
brief for appellant.

*Marlin A. White,* of Holton, argued the cause and was on the brief for
appellees.

The opinion of the court was delivered by

Fatzer, C. J.: This is an appeal from the judgment of the Sedg-
wick district court sustaining the decision of the Referee and the
Kansas Employment Security Board of Review (Board), finding that
Ernest L. Wesley (Wesley), a former employee of the Boeing
Company (Boeing) did not leave work voluntarily without good
cause attributable to his employment, and charging the unemploy-
ment compensation benefits against the account and experience of
the appellant.

The facts are not in dispute. The following is a summary of the
facts as found by the Referee, adopted by the Board, and ruled con-
clusive by the district court.

Wesley had been employed by Boeing for twelve years. His last
job, of approximately two years duration, was classified as "First
Parts Checker-Bench," a grade 3 "skilled" position which paid $3.68

per hour. He was working on the second shift at the Boeing plant. On April 3, 1968, Wesley's immediate supervisor advised him Boeing was going to reduce its work force at that job classification, and Wesley was laid off because of lack of work. Before the lay off took effect Wesley was offered employment on the second shift as a "Plastic Fabricator B," a grade 7 "semi-skilled" position which paid $3.15 per hour, which he previously held for about ten years. Prior to actual termination, Wesley elected to refuse the job offered.

Although the job offered was a reduction in rate of pay and classification, Wesley had prior experience and training at that job. He had previously worked as a "Plastic Fabricator B" before being advanced to "First Parts Checker-Bench." As indicated, the record shows that Wesley was employed at a grade 3 "skilled" level on the company scale. Grades 1-5 are skilled, 6-8 are semi-skilled, and grades 9-10 are unskilled and the skill classification has a direct bearing on the compensation received by an employee working in the various grades. Because of the collective bargaining agreement that existed between Boeing and the Union, Wesley would have retained his former rate of pay and fringe benefits for a ninety-day period if he had accepted the job offered; however, if he accepted layoff, the rate retention would have been lost if he subsequently decided to work as "Plastic Fabricator B." If he accepted the job offered, and later decided he did not like it, he could not then choose layoff from his former job. If he decided to quit, he would then be denied unemployment benefits for a period of seven weeks. There was no assurance that he would be retained at the lower classification and if he was laid off, he would receive unemployment compensation at a rate consistent with his new job. If he was recalled subsequently, he would be recalled at the new lower classification. Wesley would have had no seniority at the new job level and would have been paid all vacation time accrued and sick pay benefits consistent with the new classification.

On April 11, 1968, Wesley filed a claim for unemployment benefits and the Examiner allowed his claim. The Examiner's decision also charged the account and experience of Boeing for all benefits paid to Wesley the current benefit year. On April 17, 1968, Boeing received notice that experience rating account would be charged for any benefits paid Wesley during the current benefit year on a finding that Wesley had been laid off due to lack of work.

On April 22, 1968, Boeing timely appealed the determination of the Examiner. A hearing was then held before the Referee wherein both Boeing and Wesley gave testimony. On July 18, 1968, the Referee's decision found that the claimant was laid off due to lack of work and that his refusal of the new position was with good cause, thereby finding Wesley eligible for the receipt of unemployment benefits and finding that Boeing's experience rating account should be charged for benefits paid during the current benefit year.

Boeing timely appealed the Referee's decision to the Board. The Board then granted Boeing and Wesley the opportunity to present testimony. On January 8, 1969, the Board, with the record of the hearing before the Referee, together with the record of the hearing held before it, affirmed the findings of fact and decision of the Referee.

The action was then commenced by Boeing pursuant to K. S. A. 44-709 (*h*) [since amended, now K. S. A. 1971 Supp. 44-709 (*i*)] seeking judicial review of the determination of the Board, charging the account and experience of Boeing pursuant to K. S. A. 44-710 (*c*) [since amended, now K. S. A. 1971 Supp. 44-710 (*c*)]. The district court sustained the determination of the Board, and Boeing now appeals from that judgment.

The primary question presented this court for consideration is whether the evidence shows facts sufficient to support the Board's determination that Wesley was laid off due to lack of work. Second, and subsidiary to the primary question, is whether the evidence is sufficient to support the Board's determination that Wesley's refusal of the job offer was with good cause.

The scope of review of administrative matters of this character is defined by statute. K. S. A. 44-709 (*h*) [since amended, *supra*], provides that the findings of the Board are conclusive upon this court if supported by evidence. (*Pickman v. Weltmer*, 191 Kan. 543, 382 P. 2d 298; *Boeing Co. v. Kansas Employment Security Board of Review*, 193 Kan. 287, 392 P. 2d 904; *Zimmerman v. Board of Review of the Employment Security Division*, 208 Kan. 68, 490 P. 2d 359.)

In order to ascertain whether the evidence supports the Board's conclusion Wesley was laid off due to lack of work, we have only to look at Boeing's own personnel records to hold the Board did not err in determining that Wesley did not leave work "voluntarily without good cause attributable to his employment." The Termination Re-

port, prepared by Boeing, indicates not once, but twice, that Wesley was "laid off." That record contained sufficient boxes wherein it could be denoted that Wesley quit his employment, had that been the case. However, Boeing's record indicates the reason for the lay-off was that of "decreasing force." Under the sub-heading of Termination of Service contained in the same document, it is stated that "Wesley has been caught in reduction of force and has chosen lay-off. Wesley is an average employee and has tried to improve at all times," and indicated he was eligible for rehire. That record further shows the reason for Wesley's termination was that of "lay off." Wesley's testimony shows he was in fact laid off by Boeing on April 3, 1968, and Boeing's testimony shows Wesley was advised by a supervisor that he was to be laid off. Finally, there is nothing in the record that even suggests Wesley would have to be reduced to a grade 7 semi-skilled job together with a reduction of 53 cents per hour in pay due to his inability to perform a grade 3 skilled job level.

If Boeing seriously thought Wesley terminated his employment voluntarily, it most certainly would have indicated so in its Termination Report which provides a specific place to indicate "quit." Under such circumstances, it would be difficult to conclude that Wesley voluntarily left employment, and it is therefore the opinion of this court that the Board properly charged the account and experience of Boeing for those benefits paid to Wesley. (K. S. A. 44-710 [c], since amended.)

Ancillary to the foregoing, Boeing also argues that Wesley refused to accept "suitable work" within the meaning of K. S. A. 44-706 (c) [since amended, K. S. A. 1971 Supp. 44-706 (c), in a manner not material to this issue].

K. S. A. 1971 Supp. 44-706 (c) pertains to a claimant's *eligibility for unemployment compensation* and provides the factors or criteria for determining whether a claimant shall be disqualified for such benefits. It reads in pertinent part:

"If he has failed, without good cause . . . to accept suitable work when offered to him by . . . an employer, such disqualification shall continue for the week in which such failure occurred and for the six (6) consecutive weeks which immediately follow such week. *In determining whether or not any work is suitable for an individual, the commissioner shall consider the degree of risk involved to his health, safety, and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation or work*

*for which he is reasonably fitted by training or experience, and the distance of the available work from his residence . . ."* (Emphasis supplied.)

The question of law presented is the interpretation of the statute just quoted under circumstances such as are presented in Wesley's case. The memorandum opinion of the district court states both parties conceded in that court that as a general rule a claimant may be eligible for unemployment compensation benefits for a reasonable length of time while he seeks employment commensurate with his skills, training, ability and previous earning capacity. A similar concession was made by the parties in oral argument in this court.

In the instant case, Wesley was working at employment which paid $3.68 per hour. Prior to the effectiveness of his layoff, he was offered a job paying $3.15 per hour at semi-skilled work. That entailed a reduction of some 14 percent in Wesley's income, which was in excess of $1,000 per year. The Board was of the opinion the reduction in pay in Wesley's earnings was substantial, and that he should have an opportunity to seek employment at a wage level similar to that which he was receiving before being offered the lower grade and lower paid work. As Wesley's period of unemployment increased, it would of course necessitate he lower his expectations in the way of wages and job requirements. That was reflected in the Referee's decision, and the Board states in its brief that it is a policy it follows. It might well be that had Wesley been unemployed for some period of time and a job offer such as the one made by Boeing arose and Wesley refused, he would be found to have refused an offer of suitable employment without good cause. However, in the instant case, the Board was of the opinion Wesley should have been granted a reasonable time in which to attempt to secure employment at his present skill and wage level.

In concluding the Board did not err in its determination of the matter, the district court's memorandum opinion states:

"The net result of this interpretation of the law [Boeing's contention] would mean that a workman who was laid off or his employment terminated for lack of work without an offer of alternate work by his employer, could draw unemployment benefits for a reasonable length of time while seeking employment commensurate with his job history, training, ability, and earning capacity, without disqualification of any benefits pursuant to the general rule; whereas, if the same employer, after notifying the same workman of his pending layoff or termination of his present employment offered that workman other work of a lesser grade, for less pay, and less commensurate with his ability and earning capacity, the workman would not be protected by the general rule allowing him

a reasonable time to seek employment commensurate with his present employment, for the reason that he would never be 'unemployed' as that term is defined by statute, under such circumstances.

"In such cases, the determination of 'suitable work' would be made, as plaintiff has attempted to do here, by reference to plaintiff's type of work, degree of skill required, and earning capacity at employment prior to his current employment, and as noted before without any consideration of the criteria 'length of unemployment' since he would never be unemployed. If the workman refused the alternate work offered, he would then be disqualified for six consecutive weeks of benefits, and the employer would not be charged for those six weeks.

"If such were the law, an employer could cause a skilled workman to forfeit six weeks of compensation benefits and save himself from being charged therefor, unless such skilled workman accepted semi-skilled alternate employment commensurate to employment he had had previously, in the process of becoming skilled.

"The Court concludes that the general rule of unemployment law that claimants are to be allowed a reasonable time to seek other employment applies to claimants such as Mr. Wesley presents under the facts and circumstances of the instant case as well as to those who are unemployed as that term is defined by statute . . ."

The record clearly shows the Board considered all of the factors present in 44-706 (c) and concluded that Wesley did not have a reasonable time to seek employment consistent with his skill and training. Under such circumstances, Wesley could properly refuse the job offer and be permitted to draw unemployment compensation for a reasonable time while he was seeking work in his customary occupation. In fact, at the time Wesley was offered the job, he had not experienced any of the privations of unemployment.

We are of the opinion the district court did not err in construing 44-706 (c) for the purpose of determining what is "suitable work," and that Wesley was entitled to a reasonable period of time to seek work at his highest skill and rate of pay commensurate with his previous employment.

The judgment is affirmed.