J. P. GILLIG vs. DIRECTOR OF THE DIVISION OF EMPLOYMENT
SECURITY & another.[1]

Norfolk. February 8, 1983. — June 15, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Employment Security*, Eligibility for benefits, Availability for work,
Suitable employment. *Words*, "Suitable employment," "New work."

The board of review of the Division of Employment Security erred in
awarding unemployment compensation to a restaurant employee
who, despite a condition of her employment at all relevant times that
she be available to work all shifts, declined to accept work on the early
morning shift solely because of her preference not to work so early,
where the board, in determining that the work offered her was un-
suitable under G. L. c. 151A, § 25(c)(4), as then in effect, ignored the
requirement of § 25(c)(4) that an offer of "new work" must be in-
volved in order for that section to be applicable. [485-487]

CIVIL ACTION commenced in the East Norfolk Division of
the District Court Department on March 18, 1981.

The case was heard by *Shubow, J.*

*Michael S. Bearse*, for the employer, submitted a brief.

ABRAMS, J. This appeal challenges the decision of the
board of review (board) of the Division of Employment
Security, granting unemployment benefits to the claimant,
Kathleen Devine. The decision was affirmed by a judge of
a District Court. Pursuant to G. L. c. 151A, § 42, this case
came here for direct review with a report from that judge.
We reverse.

We summarize the facts as found by the board.[2] The
claimant was employed by J. P. Gillig (employer) as a

---

[1] Kathleen Devine, an unemployment benefits claimant.

[2] The board adopted the findings of the review examiner, but differed
with the review examiner's legal conclusion on the interpretation of G. L.
c. 151A, § 25(c)(4).

management trainee from December 23, 1979, through February 10. 1980. During that time, she earned $200 a week based on fifty hours of work. As a management trainee, one of the conditions of her employment was "to be available at all times for all shifts." The job's early shift begins at 5 A.M. The claimant had expressed her reluctance to work the early shift, although she had done so on occasion.

In early 1980, the employer closed one of his restaurants, and consolidated the management trainees at another restaurant.[3] The employer was also forced to reduce the management staff and to ensure that all the trainees would be available for all shifts. Because the claimant stated her dislike of working at the early hour at which the early shift began, her job was terminated. The board adopted the director's finding that the claimant's "unwillingness to [begin work early] was a matter of preference and the claimant could have continued in employment if she had been willing to work the early shift."

After a hearing, the director decided that the claimant had left work voluntarily and without compelling reasons or "good cause attributable to the employing unit," as required by G. L. c. 151A, § 25(e)(1). The Director therefore denied benefits.

The board reversed that decision, finding as a matter of law that the early shift was "unsuitable" employment within the meaning of G. L. c. 151A, § 25(c)(4), as amended through St. 1968, c. 323, § 5, which states in pertinent part: "No work shall be deemed suitable, and benefits shall not be denied under this chapter to any otherwise eligible individual for refusing to accept new work under any of the following conditions: . . . (4) If in the case of a female the acceptance of such work would require her to work between the hours of twelve midnight and six o'clock ante

---

[3] The transcript indicates that the claimant was employed at a restaurant which did not close.

meridian."[4] Thus, the board determined that her refusal of work and voluntary leaving was with good cause attributable to the employing unit. The board found her to be "entitled to benefits if otherwise eligible."

When the employer applied to the District Court for judicial review of the board's decision, the judge determined that the employer had no standing to challenge the validity of G. L. c. 151A, § 25(c)(4), on the ground that it constitutes unlawful sex discrimination, because the employer did not suffer such discrimination. In his appeal to this court, the employer asserts that he has standing as a "person aggrieved" by the decision; that G. L. c. 151A, § 25(c)(4) applies only if "new work" was offered to the claimant, a fact not supported by the record; and that § 25(c)(4) is invalid and unenforceable as a disparate employment condition based on sex. We conclude that no new work was involved, and therefore it was error to award the claimant benefits.[5] Thus we do not reach the other issues raised by the employer.

General Laws c. 151A, § 25(c), denies unemployment benefits to those employees who fail "without good cause, to apply for suitable employment." Suitable employment is assessed by taking into consideration various statutory criteria, as well as all of the attendant circumstances. See *Graves* v. *Director of the Div. of Employment Sec.*, 384 Mass. 766, 768 (1981); *Pacific Mills* v. *Director of the Div. of Employment Sec.*, 322 Mass. 345, 350 (1948). Section

---

[4] General Laws c. 151A, § 25(c)(4), was repealed by St. 1980, c. 131, § 10.

[5] The employer certainly has standing to raise the issue whether the offer of an early shift constituted "new work" within the meaning of G. L. c. 151A, § 25(c)(4). An employer usually has standing to challenge board decisions from "the fact that the amount of its contributions to the unemployment compensation fund is affected by the amount of unemployment benefits paid to its employees who are laid off." *Pacific Mills* v. *Director of the Div. of Employment Sec.*, 322 Mass. 345, 346 (1948). See G. L. c. 151A, § 14(d)(3). In his brief, the Director of the Division of Employment Security estimates the employer's liability to be approximately $152.

25(c) goes on to state that "benefits shall not be denied . . . for refusing to accept new work" in four statutorily defined categories of jobs which are to be considered per se unsuitable for that purpose.

In this case, the board determined that the work offered to the claimant was unsuitable under G. L. c. 151A, § 25(c)(4). In so doing, the board ignored the statutory requirement that "new work" must be involved in order for that section of the statute to be applied. "It is a well established principle of statutory interpretation that '[n]one of the words of a statute is to be regarded as superfluous, but each is to be given its ordinary meaning without overemphasizing its effect upon the other terms appearing in the statute, so that the enactment considered as a whole shall constitute a consistent and harmonious statutory provision capable of effectuating the presumed intention of the Legislature.'" *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 352 Mass. 617, 618 (1967), quoting *Bolster* v. *Commissioner of Corps. & Taxation*, 319 Mass. 81, 84-85 (1946).

The board failed to apply this principle, and gave no meaning to the words "new work." Since the Legislature has mandated that "new work" is essential for the application of G. L. c. 151A, § 25(c)(4), the board erred in granting benefits, disregarding that requirement. Further, this construction brings our statute into compliance with Federal law, which prohibits States from denying benefits to "any otherwise eligible individual for refusing to accept new work" in similar situations. 26 U.S.C. § 3304(a)(5) (1976).[6] In addition, other States with similar statutes have determined "new work" to be an essential condition for application of the rule. See *Campos* v. *California Employment Dev. Dep't*, 132 Cal. App. 3d 961 (1982); *Anderson* v. *Top O'Michigan Rural Elec. Co.*, 118 Mich. App. 275,

---

[6] The Commonwealth must comply with the Federal statute "to qualify for Federal certification." See *Director of the Div. of Employment Sec.* v. *Roman Catholic Bishop*, 383 Mass. 501, 503 (1981).

282-283 (1982); *Cointreau, Ltd.* v. *Board of Review*, 171 N.J. Super. 407, 411 (1979); *Texas Employment Comm'n* v. *E-Systems, Inc.*, 540 S.W.2d 761 (Tex. Civ. App. 1976).[7]

In this case before us, the board found, and it is undisputed, that the shift declined by the claimant was a shift which she was required to be available to work, and which she had worked in the past. Since work on that shift was a true condition of her employment, the change in shifts was not an offer of new work, as required for the automatic application of G. L. c. 151A, § 25(c)(4). As the facts were uncontested, the board erred as a matter of law.

Although the claimant was not entitled to benefits under § 25(c)(4), her job nevertheless could have been deemed to be unsuitable by the board on other grounds, if they existed. However, as the claimant raised no objections to the early shift other than her preference not to work so early, there was no other basis on which the board could have granted relief. See *Graves* v. *Director of the Div. of Employment Sec.*, 384 Mass. 766, 767 (1981); *President & Fellows of Harvard College* v. *Director of the Div. of Employment Sec.*, 376 Mass. 551, 556 (1978). The claimant also failed to assert any "good cause" to decline the early shift, which might have included "personal reasons" such as those discussed in *Manias* v. *Director of the Div. of Employment Sec.*, 388 Mass. 201 (1983), or *Conlon* v. *Director of the Div. of Employment Sec.*, 382 Mass. 19, 22 (1980). Such reasons are deemed to be significant factors for the board to consider in a decision to grant or deny benefits.

Although the board erroneously applied G. L. c. 151A, § 25(c)(4), to the claimant's request for benefits, the board adopted the findings and conclusions of the review examiner in every other respect. Thus, we reverse the judgment below and remand for entry of judgment denying benefits.

*Judgment reversed.*

---

[7] We have already implicitly recognized this interpretation of the section. See *Conlon* v. *Director of the Div. of Employment Sec.*, 382 Mass. 19, 24 n.3 (1980).