327 S.E.2d 396

**Patricia C. PERFIN**

v.

**Phyllis J. COLE, Clerk of the Circuit Court of Kanawha County; Board of Review of the West Virginia Department of Employment Security: J.F. McClanahan, as Chairman and C.C. Elmore, Jr., and Gregory E. Elliott as members thereof; John A. Canfield, as Commissioner, West Virginia Department of Employment Security; and the McDowell County Board of Education.**

**No. 16486.**

Supreme Court of Appeals of West Virginia.

March 1, 1985.

---

418

Bruce M. Green, William B. McGinley, W.V.E.A., Charleston, for petitioner.

No appearance for respondents.

McGRAW, Justice:

The appellant, Patricia C. Perfin, appeals from a final order of the Circuit Court of Kanawha County which affirmed a decision of the West Virginia Department of Employment Security Board of Review disqualifying her from receiving unemployment compensation benefits based upon a finding that she had failed to accept available suitable employment. The appellant maintains that the circuit court failed to apply the appropriate statutory factors for determining the suitability of the employment offered, and that, under those factors, the available employment was not

suitable. We agree and reverse the order of the circuit court.

The appellant was employed as a teacher's aide by the McDowell County Board of Education from January 9, 1980 to June 15, 1981. Prior to this employment, the appellant had worked as a teacher's aide in Virginia for four years, as a part-time credit reporter in McDowell County, and in various other clerical positions. On November 30, 1981, the appellant was offered employment with the McDowell County Board of Education as a school custodian at Squire Elementary. The appellant rejected this offer of employment.

On December 15, 1981, a deputy with the Department of Employment Security issued a decision disqualifying the appellant from receiving benefits for the period of November 29, 1981 to January 2, 1982, because the "[c]laimant failed without good cause to accept available suitable work." [1] At a hearing before a Department of Employment Security administrative law judge on February 1, 1982, the appellant testified that she rejected the offer of employment as a school custodian because (1) she had no prior training or experience as a school custodian; (2) she felt physically incapable of performing certain duties required of a school custodian, particularly those related to the operation of a coal-fired furnace; (3) she was afraid of working alone in the school building involved, particularly because the school had been the subject of vandalism; (4) she considered undesirable a requirement that the school custodian work one hour each Saturday and Sunday, firing the furnace and performing a "vandalism check"; and, (5) she felt better qualified to perform the types of clerical duties she had performed in connection with her previous employment.

The administrative law judge, in a decision issued on February 9, 1982, concluded, following a cursory review of the facts presented, that "these reasons did not constitute good cause and the claimant should be disqualified." The Department of Employment Security Board of Review affirmed the administrative law judge's decision on June 24, 1982, adopting his findings by reference in their entirety. On February 24, 1984, the circuit court, concluding that the issue of suitability was essentially a question of fact, determined that the final decision of the Board of Review was not plainly wrong, and affirmed the appellant's disqualification.

■ We begin our analysis of the issue of the suitability of available employment by noting that, "Unemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof." Syl. pt. 6, *Davis v. Hix*, 140 W.Va. 398, 84 S.E.2d 404 (1954); *see also Lough v. Cole*, 172 W.Va. 730, 310 S.E.2d 491, 494 n. 5 (1983); *Belt v. Cole*, 305 S.E.2d 340, 342 (1983); Syl. pt. 1, *Gibson v. Rutledge*, 298 S.E.2d 137 (1982); Syl. pt. 1, *Lee-Norse Co. v. Rutledge*, 291 S.E.2d 477 (1982); *Kirk v. Cole*, 288 S.E.2d 547, 549 (1982); *Hill v. Board of Review*, 276 S.E.2d 805, 812 (1981); *London v. Board of Review*, 161 W.Va. 575, 576–77, 244 S.E.2d 331, 333 (1978); *Bennett v. Hix*, 139 W.Va. 75, 83, 79 S.E.2d 114, 118 (1953). As to the appropriate standard of review in unemployment compensation cases, this Court held in Syllabus Point 1 of *Kisamore v. Rutledge*, 166 W.Va. 675, 276 S.E.2d 821 (1981), that, "Findings of fact by the Board of Review of the West Virginia Department of Employment Security, in an unemployment compensation case, should not be

---

**1.** Under West Virginia Code § 21A-6-3(3) (Supp.1984), "[A]n individual shall be disqualified for benefits ... [f]or the week in which he failed without good cause to ... accept suitable work when offered ... and for the four weeks which immediately follow for such additional period as any offer of suitable work shall continue open for his acceptance." Furthermore, West Virginia Code § 21A-6A-1(12) (1981 Replacement Vol.) provided at the time of the appellant's disqualification that, "No individual shall be entitled to extended benefits ... if he was disqualified under the provisions of ... [§ 21A-6-3(1), (2), or (3)]." The extended benefits ineligibility provision currently reads, "An individual shall not be eligible to receive extended benefits ... if such individual has been disqualified for regular benefits ... because he or she ... refused an offer of suitable work." *See* West Virginia Code § 21A-6A-1(12)(G) (Supp. 1984).

set aside unless such findings are plainly wrong; however, the plainly wrong doctrine does not apply to conclusions of law by the Board of Review." *See also* Syl. pt. 1, *Lough v. Cole, supra;* Syl., *Smith v. Cole,* 172 W.Va. 556, 309 S.E.2d 54 (1983); *Farmer v. Cole,* 171 W.Va. 524, 300 S.E.2d 637, 639 (1983); Syl., *Oyler v. Cole,* 171 W.Va. 402, 299 S.E.2d 13 (1982).

We disagree with the circuit court's conclusion that the issue of suitability of available employment is a question of fact and that the plainly wrong doctrine applies. Under West Virginia Code § 21A–6–5 (1981 Replacement Vol.),[2] the factors which must be considered in determining whether particular employment is suitable for a particular unemployment compensation claimant are (1) the degree of risk to health, safety, and morals; (2) fitness and prior training; (3) experience and prior earnings; (4) length of unemployment; (5) prospect of securing local work in the claimant's customary occupation; and, (6) distance from the claimant's residence. The suitability of available employment in an unemployment compensation proceeding must be determined with reference to these statutory factors. *See Richardson v. Review Board of the Indiana Employment Security Division,* 467 N.E.2d 770, 773 (Ind.App.1984); *Tobin v. Maine Employment Security Commission,* 420 A.2d 222, 225 (Me.1980); *Gillig v. Director of the Division of Employment Security,* 389 Mass. 483, ——, 450 N.E.2d

622, 624 (1983). Therefore, the issue of the suitability of available employment presents a question of law. *See Loew's Inc. v. California Employment Stabilization Commission,* 76 Cal.App.2d 231, 243, 172 P.2d 938, 945 (1946); *Vail v. Employment Division of the Department of Human Resources,* 30 Or.App. 365, ——, 567 P.2d 129, 131 (1977); *Gettig Engineering v. Unemployment Compensation Board of Review,* 81 Pa.Cmwlth. 416, 473 A.2d 749, 752 (1984); *Aladdin Industries, Inc. v. Scott,* 219 Tenn. 71, 77, 407 S.W.2d 161, 164 (1966). Unfortunately, despite a legislative mandate that "the commissioner *shall* consider" the six statutory factors "[i]n determining whether work is suitable for an individual," West Virginia Code § 21A–6–5 (1981 Replacement Vol.) (Emphasis added), the record in this proceeding is barren of any reference to these factors. Therefore, we must examine the circumstances presented in light of these factors in determining whether the available employment met the statutory definition of suitability.[3]

As to the degree of risk associated with the school custodian position, the appellant would have been required to frequently work alone in the school building, particularly on weekends and holidays; she would have been responsible for policing the school grounds, for conducting weekend "vandalism checks," for opening the building each morning, and for closing the building each night; and she was aware of the fact that the school had been the subject of

---

**2.** West Virginia Code § 21A–6–5 (1981 Replacement Vol.) provides, in full, that:

In determining whether work is suitable for an individual, the commissioner shall consider:

(1) The degree of risk involved to the individual's health, safety, and morals.

(2) The individual's physical fitness and prior training.

(3) His experience and prior earnings.

(4) His length of unemployment.

(5) His prospects of securing local work in his customary occupation.

(6) The distance of the available work from his residence: Provided, however, that the distance from his new residence shall not be considered in determining suitable work if such distance from available work was created as the result of the individual voluntarily

changing his residence to a locality other than that locality in which he resided at the time he voluntarily quit his last employment without good cause involving fault on the part of the employer.

**3.** Although the statutory factors must be considered in analyzing the issue of the suitability of available employment, other salient factors may also be considered in light of the attendant circumstances presented in a particular case. *See Arizona Dept. of Economic Security v. Magma Copper Co.,* 125 Ariz. 23, 26, 607 P.2d 6, 9 (1980); *Ball v. Review Board of the Indiana Employment Security Division,* 149 Ind.App. 494–500, 273 N.E.2d 869, 872–73 (1971); *Gillig v. Director of the Division of Employment Security,* 389 Mass. at ——, 450 N.E.2d at 624; *In re Watson,* 273 N.C. 629, 634, 161 S.E.2d 1, 6 (1968).

vandalism, including an incident which occurred during her interview involving the destruction of the school's flag pole. In the appellant's words, "[I]t really would frighten me to have to work in a building alone." As to the appellant's fitness and prior training, school custodial duties such as maintenance of the entire school building and playground areas, removing trash from the playground and lunchroom, clearing the steps, walkways, and playground areas of ice and snow, and stoking a coal-fired furnace require a level of physical strength and stamina not ordinarily associated with the types of clerical positions in which the appellant had received her prior training. The appellant testified that she was particularly concerned with her responsibilities with respect to the school furnace, stating that, "I didn't feel like I was physically able to crawl back in there in that little room and lift in coal in the firing up of the furnace and doing that type of work." As to the appellant's experience and prior earnings, she testified to a relatively extensive background in various clerical positions, particularly with respect to the mathematic tutorial duties involved in her five and one-half years as a teacher's aide. She also testified that she had taken some college courses in education, although she had not completed requirements for a degree. Although the record does reflect that the school custodian's salary was one hundred dollars more per month than the salary formerly received by the appellant as a teacher's aide, the appellant testified, "I am just not trained for this kind of work." As to her length of unemployment, the record reflects that she had been unemployed for twenty-four weeks when offered the school custodian position. As to the appellant's prospect of securing local work in her customary occupation, the record is silent. We note, however, that although obtaining another teacher's aide position seemed unlikely, the possibility of obtaining local clerical work would have been much greater. Finally, as to the distance of the custodial position from the appellant's residence, although the record indicates that the appellant resided near Gary, while the school is located some distance away in Squire, the record does not reflect the precise distance involved.

The issue of whether particular employment is suitable for a particular unemployment compensation claimant must be determined by careful examination of the totality of the circumstances presented in light of the six statutory factors under West Virginia Code § 21A–6–5 (1981 Replacement Vol.). Although all applicable statutory factors must be considered in determining whether particular employment is suitable for a particular unemployment compensation claimant under West Virginia Code § 21–6–5 (1981 Replacement Vol.), no single factor is determinative. *See Grace v. Maine Employment Security Commission*, 398 A.2d 1233, 1235 (Me.1979). Furthermore, application of the statutory suitability factors to the circumstances presented must be performed in recognition of the fact that the issue is one of suitability, and not one of merely ability or competency. As the Vermont Supreme Court stated in *In re Potvin*, 132 Vt. 14, 18, 313 A.2d 25, 27 (1973), "Maximum utilization of a worker's skill and experience is a recognized goal of the unemployment compensation system, and courts, as a general rule, have recognized the claimant's right to reject, without loss of benefits, a job which involves far less skill than he possesses. *Pacific Mills v. Director of the Division of Employment Security*, 322 Mass. 345, 77 N.E.2d 413 (1948); *Bowman v. Troy Launderers and Cleaners*, 215 Minn. 226, 9 N.W.2d 506 (1943)." *See also* Anno., 97 A.L.R.2d 1120, § 3 (1964). Similarly, as the United States Supreme Court noted in *California Human Resources Department v. Java*, 402 U.S. 121, 132, 91 S.Ct. 1347, 1345, 28 L.Ed.2d 666, 674 (1971), under the federal law upon which state unemployment statutes are based, "providing for 'security during the period following unemployment' was thought to be a means of assisting a worker to find *substantially equivalent employment*." (Emphasis added) (Citation omitted).

Unemployment compensation decisions in other jurisdictions are illustrative of the concept that merely because a claimant is

arguably capable of performing available employment does not necessarily mean that such employment is "suitable" under the applicable statute. *See Dubkowski v. Administrator,* 150 Conn. 278, 284, 188 A.2d 658, 661 (1963) (former skilled laborers were justified in refusing employment as sweepers); *Boeing Co. v. State Employment Security Board of Review,* 209 Kan. 430, 435, 496 P.2d 1376, 1380–81 (1972) (former skilled parts checker was not disqualified for rejecting semi-skilled position as a plastic fabricator); *Pacific Mills v. Director of the Division of Employment Security,* 322 Mass. at 349–51, 77 N.E.2d at 415–16 (former skilled officeworker was justified in refusing position as shipping clerk and a weaver was justified in refusing position as a winder); *Berthiaume v. Christgau,* 218 Minn. 65, 70–71, 15 N.W.2d 115, 118–19 (1944) (former boilermaker not disqualified for rejecting offer of position as a truckdriver); *Bowman v. Troy Launderers & Cleaners, Inc.,* 215 Minn. at 229, 9 N.W.2d at 508 (former steam cleaner in a drycleaning department was not disqualified for rejecting position as a mechanic/truckdriver); *Green v. Republic Steel Corp.,* 37 N.Y.2d 554, 559–60, 338 N.E.2d 594, 596–97, 376 N.Y.S.2d 75, 78–79 (1975) (former bricklayer was entitled to benefits although he rejected an offer to work as a laborer); *Claim of Schmidt,* 473 N.Y.S.2d 272, 273, 100 A.D.2d 655, 655–56 (1984) (in light of evidence that claimant's duties as a regular teacher were much greater than those of a per diem substitute, her declination of per diem employment was not disqualifying); *In re Troutman,* 264 N.C. 289, 294–95, 141 S.E.2d 613, 618 (1965) (former skilled tool and die maker's refusal to accept a lower skilled job as an electrical bench assembler was held not to be disqualifying); *Bethlehem Steel Corp. v. Unemployment Compensation Board of Review,* 10 Pa. Commw. 292, 294, 310 A.2d 697, 698 (1973) (former skilled pattern maker, who had spent four years as apprentice, was not disqualified for refusing an offer of a jani-

torial position); *United States Steel Corp. v. Unemployment Compensation Board of Review,* 10 Pa.Commw. 295, 299, 310 A.2d 94, 96 (1973) (claimants given option of accepting direct layoff from millwright positions or being assigned as laborers did not voluntarily leave their employment without good cause). Even where the claimant involved has previous experience in the position offered, courts have held such employment to be unsuitable if not commensurate with the claimant's most recent training and experience. In *Unemployment Compensation Board of Review v. Franklin & Lindsey, Inc.,* 497 Pa. 2, 6, 438 A.2d 590, 592 (1981), the court held that an offer of "purely secretarial work" did not constitute suitable employment for a former draftsperson/surveyor, despite her past experience as a secretary, stating that, "The law does not require that a woman, 'once a secretary,' remain 'always a secretary' after she has acquired significant training and experience in another chosen profession." Similarly, in *Hendrickson v. Northfield Cleaners,* 295 N.W.2d 384, 385, 387 (Minn.1980), the court held that a former postal clerk was not disqualified for rejecting an offer of employment as a clothes presser, even though she had previously held a temporary, part-time clothes presser position with the same company, where she had "improved her skills between the time she quit her temporary, summer job [as a clothes presser] and when she was offered it back" through training for a position as a registered nurse. *See also In re Potvin,* 132 Vt. at 19, 313 A.2d at 28 (former stenciler was not disqualified for rejecting offer as a chambermaid, despite her past employment as a chambermaid).

■ With the exception of the rate of compensation,[4] the application of all of the other statutory factors to the circumstances presented in the present case indicates that employment as a school custodian was not suitable under West Virginia Code § 21A–6–5 (1981 Replacement Vol.).

4. We note that the appellant's weekly unemployment compensation benefit rate was $73.00. Therefore, it seems unlikely that she rejected an offer to work as school custodian at $837.00 per month because she found unemployment compensation more desirable.

Curiously, this conclusion was also reached by the same administrative law judge involved in the appellant's case in a consolidated appeal by several former teacher's aides who were offered employment as school custodians at four other schools in McDowell County. In *Brenda Presley, et al. v. McDowell County Board of Education*, No. 81–4907 (November 6, 1981), the administrative law judge held that, "due to the nature of the work, it is my opinion that the custodial work offered this group of claimants due to their past training and experience was not suitable and, therefore, they should not be disqualified for receiving benefits for that reason." *See also Doris I. Hensley v. Board of Review of the West Virginia Department of Employment Security*, No. AP–CA–82–83 (Kan.Ct.Cir.Ct. February 27, 1984) (reversing a board of review decision which affirmed the administrative law judge's determination that the rejection by a former teacher's aide of the school custodian position at Squire Elementary was disqualifying as "plainly wrong"). In *Griffin v. Employment Division*, 55 Or.App. 768, ——, 639 P.2d 1294, 1296 (1982), the court reversed and remanded a determination that a claimant who had previously worked as an instructional assistant and groundskeeper for a school district was required to accept a position as a school custodian, stating, "There is nothing in the present record to suggest that the petitioner was unlikely to obtain an instructional position soon." In the present case, not only was there no finding with regard to the likelihood that the appellant might secure another teacher's aide position, there was no finding with respect to the likelihood of her securing local clerical employment for which she possessed experience and training. After careful examination of the totality of the circumstances presented, with particular attention to the application of the six statutory factors, we conclude that the school custodian position offered the appellant was not suitable, and that she should not have been disqualified from receiving benefits.

Accordingly, we reverse the judgment of the Circuit Court of Kanawha County which affirmed the final order of the Board of Review, and we remand the cause to the Commissioner of the Department of Employment Security with instructions to enter an order awarding the appellant the benefits to which she is entitled in accordance with the principles enunciated in this opinion.

Reversed and remanded with instructions.